LADD, C. J., EVANS and SALINGER, JJ., concur.

---

EVA L. LADD, Appellant, v. FRANK L. LADD, Appellee.

DIVORCE: Custodial Orders—Modification under Changed Condi-
1 tions. A custodial order apportioning the custody of a child between the father and mother may, on a showing that, subsequent to the order, the father has deprived himself of any means of properly caring for the child, be so modified as to assign the custody of the child wholly to the mother.

DIVORCE: Custodial Orders—Appealability. Appeal lies from a
2 refusal to modify custodial orders *in re* children, even though no appeal has been taken from the divorce decree.

*Appeal from Taylor District Court.*—HOMER A. FULLER, Judge.

FEBRUARY 16, 1920.

THIS was an application in the district court to modify provision in a former decree of divorce pertaining to the custody of the child. The application as made was, in effect, denied, and plaintiff has appealed.—*Reversed and remanded.*

*Wisdom & Burrell,* for appellant.

*W. M. Jackson,* for appellee.

EVANS, J.—I. On February 20, 1918, the plaintiff obtained a decree of divorce from her husband, defendant, on

the ground of cruel and inhuman treatment. By such decree she was awarded the custody of their only child, Ralph, for 9 months of the year, such custody passing to the defendant for the months of June, July, and August, "as long as said defendant remains a farmer, or keeps said child upon a farm." The boy is 12 years old. On June 22, 1918, the defendant filed an application for a mandatory order, directing the plaintiff to perform the decree, and to give to the defendant the custody of the boy, in accordance with its terms. The allegation of defendant's application was that the plaintiff had refused to the defendant the custody of the boy during the months of June, July, and August. To this application the plaintiff appeared, and denied the allegations set out. She also averred that the defendant had no home into which he could take the boy. At the same time, she filed in her own behalf an application for a modification of this provision of the decree, on the ground of changed conditions since the decree was entered, as contemplated by Code Section 3180. To this application there was no response. These respective applications came on for trial at the same time, on February 19, 1919.

1. DIVORCE: custodial orders: modification under changed conditions.

The facts developed by the evidence on the hearing of the application are not greatly in dispute. It appears by the original decree that the plaintiff was allowed $1,500 of alimony, and the defendant was allowed to retain the 80-acre farm upon which the parties had made their home. That part of the decree which awarded partial custody of the child to the defendant was as follows:

"Except during the months of June, July, and August of each year, during which time, or that during June, July, and August, the said child, Ralph Ladd, to be under the control and custody of the defendant, Frank L. Ladd, as long as said defendant remains a farmer or keeps said child upon a farm, and both the plaintiff and the defendant are

required to permit each other to visit said child while under the control and custody of either party, during all reasonable times."

As bearing upon defendant's application, it appears that, on two or three occasions, the defendant had taken unwarranted liberties with his former wife, in insisting upon unpleasant conversations with her. On one occasion in May, he had approached her in one of the stores of the town on Saturday afternoon, in the presence of many people, with a persistence that overcame all efforts on her part to avoid him. His right of conversation was predicated upon his assertion that "you are as much my wife as you ever was." He upbraided her with having other affections, and advised her that she was much talked about, and that her good name was affected by such talk. On another occasion, he went to the home of her parents, and entered the house uninvited, and insisted upon similar conversation. She withdrew from him, and went upstairs. After he had withstood polite requests to withdraw from the house, and to desist from his advances toward his former wife, he was peremptorily ordered by the wife's father to leave the premises. This was in June. This is the incident upon which was predicated the allegation that the custody of the boy had been refused to him. Shortly after the entry of the decree of divorce, the defendant sold the farm, and yielded possession. He engaged at once in odd jobs, which took him from one place to another; but he had no home. In April, he was employed as a farm hand by Floyd Groves. Groves was a widower, with two children, a boy and a girl, 12 and 15 years of age, respectively, and without other woman help in his home. He could not furnish to the defendant a home for the boy. The defendant first assumed the attitude in these proceedings that he had arranged with Groves for a home for the boy. This was not true, as later admitted by the defendant. This was the state of affairs when the issues

were made by the pleadings filed. It was clearly true that the defendant had no home to which he could take the boy.

After the decree, the plaintiff and her boy made their home with her parents on a farm. It is undisputed that it is a highly suitable home in which to rear the boy. The defendant continued his services with Groves until the last of July, when it terminated. In the first week of August, he entered into the service of Simpson, in the same capacity. The Simpson family was highly suitable, and defendant had their permission to bring the boy to such home. He was still in the employ of Simpson at the time of the hearing of the application, February 19, 1919. It does not appear that he had any contract of employment for any fixed period. The boy himself was strongly desirous of making his home with his mother, at his grandfather's. The trial court modified the decree, by adding thereto the following provisions:

"It is further ordered that, on the 2d and 4th Friday of each month during the school year, the defendant, Frank L. Ladd, shall have the right to go to the schoolhouse and take the minor, Ralph Ladd, to the home of Eugene Simpson, where the defendant now resides, and keep the said minor child with him until the following Monday morning, when he shall return the said minor to his school.

"It is further ordered that, during the months of June, July, and August, when the defendant has the custody and control of the minor, that, on the afternoon of the second and fourth Friday of each month of June, July, and August, the plaintiff shall have the right to call at the home of the defendant, being the farm home of said Eugene Simpson, and take the minor to her home, and retain him until the following Monday morning, when she shall return the said minor to the home of the said Eugene Simpson."

It will be noted that the foregoing provision can be workable only so long as the defendant continues in the em-

ploy of Simpson. Such employment is subject to termination at any time. Furthermore, the modifications thus made were not asked for by either party. The defendant asked no modification of the original order. The plaintiff alone asked that. The modification made does not respond to her application, but amounts, in effect, to a denial of it. The order in its original form provides for the right of visit at all reasonable times. The defendant has always had abundant opportunity to visit the boy whenever he chose to do so. He did not frequently avail himself of such opportunity. The first question which is presented is whether the conditions have so changed, since the original order was entered, as to bring the case within the provision of Code Section 3180. In the original order, the defendant's right of custody for June, July, and August was qualified by the condition that it should apply only while the defendant remained a farmer. At the time of its entry, the defendant owned the farm home where the boy had been reared. The fair implication of the order was that, in order to be entitled to have the custody of the child, the father must maintain this farm home, or a fair equivalent, into which he could take the boy. We think the later circumstances changed conditions materially, and presented a grave question whether the defendant had any home for the boy, within the contemplation of the decree. Clearly, he had no place for him in June and July, 1918. He could have furnished him board and lodging at Simpson's during the greater part of the month of August. Whether he can do this next June, July, or August can only remain to be seen.

Manifestly, it is highly desirable and for the best interest of this boy that his life be settled in some home under the most favorable circumstances possible. His original home has been wrecked through the wrongful conduct of his father, as adjudicated. So far as his future custody is concerned, his best interest is paramount to any right of

his father to his custody. Upon the record before us, the opportunity open to him to go into his grandfather's home, and become a member of that family, is a providential one, and, in his interest, ought not to be lightly spurned. We do not find in the argument of appellee a suggestion of claim that any interest of the boy will be subserved by breaking his life into sections, nine months and three months, or by his spending these particular three months with his father. The order is defended on the ground that the father has a right to a division of the custody. This is not the criterion upon which judgment herein must be founded.

We reach the conclusion that the plaintiff's application for a modification should have been sustained, and that she should be awarded the continuing custody of the boy until such time as changed circumstances shall make expedient a changed order.

II. The defendant filed a motion to dismiss the appeal. Such motion has been submitted with the case. The general ground of the motion is that there was no appeal from the decree of divorce, and that the decree for alimony was fully performed by the defendant and accepted by the plaintiff; that, having accepted such performance of the decree as was beneficial to her, she cannot now appeal from a part thereof. The motion is not well taken. If it could be sustained on such ground, then no order as to custody of the child could ever be changed, under Code Section 3180, unless there had been an appeal from the decree of the divorce.

2. DIVORCE: custodial orders: appealability.

The scope and validity of a decree of divorce, as such, is in no manner affected by the order for the custody of the child, nor by future changes in such order. A decree of divorce is such, even though there be no order affecting the custody of the child. It is no less such, if there be an order affecting the custody of the child. The motion is accord-

ingly overruled, and the order of the trial court is reversed and the cause remanded.—*Reversed and remanded*.

WEAVER, C. J., GAYNOR and PRESTON, JJ., concur.