THOMAS N. REEVES, Appellant, v. WILMA MAY REEVES, Appellee.

FEBRUARY 7, 1928.

*O. C. Brown*, for appellant.

*Clarence I. Spencer*, for appellee.

EVANS, J.—In November, 1922, the plaintiff obtained a decree of divorce from the defendant on the ground of desertion. Decree was entered by default, under a tacit arrangement that the mother's custody of the child should not be disturbed by the decree. The only child of the parties was a boy, four years of age at the time of the entry of the divorce decree, and eight years of age at the time of the hearing of this application. It appears that the parties had not lived together for a long time prior to the entry of the divorce decree, and that the child in question was eighteen months of age before the plaintiff had ever seen it, and that the plaintiff never contributed in any manner to the support of the child or of the mother. In his present application, the plaintiff sets forth that he has remarried, and has three children by his second marriage; that he owns a good farm home, and has money in the bank, and is well fixed financially; and that he is better situated to care for the child than is his mother, the defendant herein. The case came to a hearing on the merits in the district court, and much evidence was received into the record. Such evidence was summarized in a written opinion by the court, and is a part of the record before us. We take the following excerpt therefrom:

"However, the mere fact that the environment of the father's home would be better than the environment of the defendant's home in the city of Des Moines is, in and of itself, no reason for the change of the custody of the child. At the time the original decree was entered in this case, the record shows that the mother was living in the city of Des Moines,—at least she signed the acceptance of service of the original notice in said city. The record, however, does not show where the grandmother of the child was then living, but it does show that she, up to that time,—at least for the most part,—had had the custody of this child, who was then about four years of age. The plaintiff himself in his petition said that, if he were given

the custody of the child, he would permit it to remain with the grandmother, and that with her he would have a good home. However, he was not given the custody of this boy, but same was awarded to the mother. There are some matters in this record that are not altogether to the liking of the court, such as the matter of the alleged taking of money from the store of one of the witnesses, and the matter of the purchase of a pumpkin from another one of the witnesses, and the alleged statements of the grandmother with reference to how he secured the dollar from which the price of the pumpkin was taken. While, of course, the court may be mistaken about the fact or facts in connection with these matters, and while I am of the opinion that the matter in each of said instances was more serious than the defendant and her witnesses claim with reference thereto, I do not find that there is any reasonable probability of any change in such disposition, if disposition it is, by any change of the custody of this boy. The proof is, under the record, somewhat uncertain as to each of these matters, and on account thereof I would hesitate to condemn the boy in either instance, or make a change in the environment of custody of said boy. The testimony with reference to the boy's being out on the railroad track, and while held in a dangerous position for a while, his absence from the home on said occasion is fairly and reasonably explained; and neither the mother nor the grandmother, who had charge of things in the most intimate way, can be condemned for the fact that he may on some occasions go away from the home, and may at times be under such situation as that they may not know of his exact whereabouts at the time. That, however, is likely to be the case with reference to the care of young boys, in whosever custody they may be. The matter referred to, and as shown by an exhibit offered in the case, when the absence of the boy was reported to the police, on or about September 18, 1926, explained by the defendant by showing that the boy was away from home for a time longer than they thought he ought to be, on a visit to a relative, and that they had heard threats to the effect that the plaintiff would take the boy sometime, that they feared on said occasion that he had carried out the threats as they understood it, and it was on that account that he was reported to the police as missing.

"If this excuse for so reporting his absence to the police is

correct, then his absence for a short time from the home longer than he was expected to be away is not any particular fault of the defendant. The other particular instance which is sought to have been shown by the newspaper report introduced in evidence as an exhibit, wherein it is stated that several boys,—giving their names,—among whom was Billy Bliss, had gone away from home, and was taken in charge by the police, or by some probation officer. This newspaper report, however, is not competent evidence of any fact stated in said report; and it occurs to me that, had there been anything of a serious nature connected with the said newspaper report, that counsel for plaintiff, with his well known vigor and industry, would have been able to have brought to the attention of the court some competent evidence as to said reported transaction with reference to said boy. The court cannot take the mere newspaper report as competent evidence of any failure on the part of the defendant, or those with whom he lives, and have more particular charge of the boy of any failure on their part to properly care for and control said child. It occurs to the court, however, that, in view of all these matters now complained of, the defendant should exercise a little greater care and caution over said boy with reference to his whereabouts, and with reference to his attendance upon the schools, and also with reference to his moral and religious training. If there is any tendency in this boy to take things that do not belong to him, the defendant and the grandmother, if no one else of the family, are advised of that situation, and vigorous measures should be taken with reference to said tendency, and with reference to his moral and religious training or education.

"As the father of the boy, while a witness, and while first being examined, admitted that he did not see the boy until he was about eighteen months old, and in view of the fact that the mother of the boy corroborated the admission of the father to the same effect, and in view of the fact that the grandmother also corroborated the statement of the mother, and the confession or admission of the father to the same effect, I am reasonably convinced that the father first saw the boy about eighteen months after his birth, and that, so far as this record shows, he had taken no particular interest in him prior to said date. It is also probable that the proceedings against the father in Polk

County, wherein he was convicted of desertion of this boy, and was required to pay a stipulated amount monthly for his support, may have had a tendency to stimulate his interest in the boy's welfare. However, such facts are not obstacles in the way of a change of the original decree as to the custody of said child, if he is not receiving such reasonable care and attention as ought to be given for his future welfare. I do not know what the facts may be with reference to the physical condition of the boy, nor as to what ailments he may have been afflicted with in the past, nor as to whether he was bothered or afflicted with any venereal diseases; but I do know that what was testified with reference to such venereal disease was purely hearsay, and further, that there was no showing that the mother, by direct contact with the father, had communicated to her any such alleged venereal disease. Besides, except as it may bear upon the present physical condition of the boy, and the consequent need of the mother's or grandmother's personal attention on account thereof, such matter has no bearing upon the question now before the court, unless it was intended to thereby show that the father is not a suitable person, on account of such claimed venereal condition, to have the care and custody of the boy; but surely it would not be expected that the court should, on such testimony, find that, on account of such alleged fact, plaintiff is not a suitable person to have the care and custody of his son. I think, however, that, under the whole record, the court ought not at this time to order any change or modification of the original decree with reference to the care and custody of the boy. Except as to some changes of residence in the city of Des Moines, the evidence does not show that the grandmother, in whose care and custody the plaintiff in his original petition recommended as a good place for the boy to be kept, there is no showing or claim that the grandmother's home is not a good place for this boy at this time, except as it is claimed the grandmother is not in good health. This, however, was squarely met by the grandmother's claim that she is in reasonably good health, and is not confined to her bed, as the plaintiff's testimony would have a tendency to show. The plaintiff, somewhere in his examination, stated, in substance, that the boy was in the habit of hopping onto passing automobiles; but no instance is given of such fact, and no one else has testified to any occasion where the boy did such acts.

"My first thought in this matter was that I probably would be justified in modifying the original decree to the extent of giving the father the custody of the boy during the summer months, when there would be no school for the boy to attend in the city, and when his care and custody would be more difficult in the city than when he was in attendance upon the public schools. However, on further consideration of the matter I have concluded to make no such change at this time; but the application of the plaintiff will be dismissed, at his costs, with the right, if so advised, to bring further application for such modification of said decree in the future unless the care and attention of the boy is such as the boy ought to have, under his present environment. When the original decree was entered in this case, it seems to have been well known to plaintiff that the mother, while given the care and custody of the boy, would have to intrust his immediate supervision and care to her mother, with whom she has made her home."

We have carefully read all the evidence in the case. The foregoing excerpt from the opinion of the district court is a very fair presentation and analysis of the same, and we are in full accord therewith. We see nothing to be gained by adding anything to the discussion therein contained.

The order of the district court is, accordingly, affirmed.— *Affirmed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.