Myron H. Horn, Appellee, v. Sara Horn (Mrs. E. H. Anderson) Appellant.

No. 43227.

February 13, 1936.

Miller, Miller & Miller, and Baker & Parrish, for appellant.

W. J. Springer, for appellee.

Parsons, J.—This case is an aftermath of a divorce granted to the plaintiff, appellee herein, against the defendant, appellant. The two were married at Canton, South Dakota, March 19, 1919, and lived together until January 10, 1932, when, having separated, divorce proceedings were started in Decatur county, Iowa, January 28, 1932. The plaintiff claimed a divorce on the ground of cruel and inhuman treatment, and claimed a written statement as to alimony and custody of the two children, Katherin Ida May Horn, 12 years of age, and Myron William Horn, 8 years of age.

On April 28, 1932, the defendant filed an answer and cross-petition, and among other things set forth in the answer, was the following:

"Defendant admits having signed a written agreement as to alimony and custody of the children, but alleges that the same was made under force, duress and by reason of the plaintiff threatening the defendant's life in that if she did not sign the same as drawn up he would kill her, her father and himself; that the defendant being fearful of her life by reason of said threats, duress and force, signed said Agreement, and not otherwise."

She also charged the plaintiff with cruel and inhuman treatment, and alleged that she had no means of support. Stipulation was then made between the two parties as to alimony and custody of children, subject to the right of the plaintiff to see the children at certain times, and that if the plaintiff elected to have either of said minor children visit him, in vacation time, he was to notify the defendant ten days before taking them; and provided for the rents of some small properties they owned, that each was to own a one-half interest in said properties; provided for small items of personal property to go to the defendant, and that plaintiff was to keep the rest. This was followed by a decree on the 13th of October, 1932, following generally the lines of the stipulation, and that the plaintiff was to pay to the defendant the sum of $14 per month each for the care and support of the two minor children of plaintiff and defendant, while said children were in school, and said payments to cease at the time each child reaches the age of eighteen years, said sums to be paid to the clerk of the district court of Decatur county, Iowa.

Plaintiff filed a supplemental petition on November 19, 1933, about a year after the decree, claiming there had been a substantial and material change in conditions; that at the time of the decree the defendant had no home of her own and was not employed, and was required to keep said children in the home of her parents; but that his former wife had remarried to a man named Anderson, the 12th of January, 1933; and set forth that Anderson was drawing a lucrative salary and was able to keep and provide for his foster children; and that defendant was also employed and drawing a lucrative salary, and was able to care for and provide for the children; and that owing to the financial depression his wages had been cut down from $25 per week, to a flat wage of $5 per week, with commissions, and that his earnings did not average to exceed $67 per month, and that he was no longer able to pay to the defendant the amount required in said decree.

Judging from the allegations and pleadings of the divorce proceedings, the matrimonial bark of these two people floated on a turbulent sea. Each accuses the other of cruel and inhuman treatment, and the defendant complains of having been compelled to sign the agreement first referred to in the plaintiff's petition. The questions coming up in this matter are after the decree of divorce had been entered. It concerned the custody of the children, and concerned the right of the defendant to take them. It appeared by a proceeding in this court, after the decree had been entered, that the plaintiff was compelled to return the daughter whom he had taken from the custody of her mother, and he resisted the right of the mother to get her back to go to school, until an order was entered compelling him so to do.

In his supplemental petition the plaintiff claimed that the girl was thirteen years of age and undergoing the adolescent period of life and needed the influence of a good, wholesome and virtuous woman to take the place of her mother, and was not getting such attention; that unless said child was given the necessary and required attention this plaintiff felt her morals might be corrupted and her ideals perverted; and he set up that the boy was ten years of age and needed not only the attention of a father, but of a mother, and was not getting the direction and attention a boy should receive. He attached interrogatories for the defendant to answer under oath, and in one of the answers she said, "My marriage to Myron H. Horn was so unfortunate, my life during the latter part of my marriage was unhappy and distasteful; I am endeavoring to forget the same." She said her life with her parents prior to her marriage had been a happy one. The court in an order entered March 3, 1934, ordered that the plaintiff be allowed once each three weeks, on Sundays, to have the children, and was given the right to call for and receive the children at the residence of defendant, and to take them to shows or places of amusement, or other fitting and proper places, in the city of Des Moines; and was to have the same right each third Sunday until the determination of the supplemental petition. On December 7, 1934, he filed another supplemental petition showing that he was getting a salary of $10 per week, and that was barely sufficient to pay his actual living expenses, and made complaint again about not seeing the children. All these matters were denied by the defendant. In an order made on the hearing December 10, 1934, for not having paid the allowance

to his wife for the support of the children, the court found he had paid all alimony under decree to October 1, 1933, and $1.00 on the payments should be made on that date. It dismissed the application for contempt for not paying.

The plaintiff claims also that he went up to see the children a time or two and that he did not get to see them; one time appears to be when the mother was ill and about to be confined. It appears further in the testimony that he was asked whether during the time he and his wife lived together, did they keep the children in the home most of the time? He replied, "No, we never." "Q. What was done with them? A. They were up to their grandparents most of the time." The grandparents lived at Sioux Falls, S. D., that is, probably 20 miles north of Canton. The grandfather was the father of the mother of the children; he was a fairly prosperous nurseryman at Sioux Falls, S. D. Plaintiff said the last time he saw his son was in 1933 in front of the home, then he went to the door and knocked, and asked the boy to come over to the car, but he did not come. That the last time he had his son with him was in September, 1932, this was before the divorce decree, and he had been with him then practically all summer. He was staying in a little house on one of the properties they had there, and his wife and he were not living together at that time; that they had not lived together since January, 1932; had several negotiations together about property settlement. The first agreement he made with his wife in regard to property settlement is not here, but the record sets out that Sarah Horn was to be granted by the agreement the custody and control of the minor children, in consideration of which the plaintiff, Myron H. Horn, was to be relieved from all alimony and from all child support. This exhibit was left with the court when the case was taken under advisement and seems to have been mislaid.

The court entered a long supplemental decree on the 10th of December, 1934, and modified the decree so as to cut down the alimony from $28 per month to $10 per month, to be paid on or before the 15th of each month, commencing with December 15, 1934, and said: "Said amount to be in full satisfaction of all alimony and full support of the children." The order further provided that the plaintiff be allowed to visit the children, and it permitted him to correspond with them, at least once a month, and it required that the defendant herein see that the children

replied to the letters of plaintiff. That the children were to be permitted to visit him at his home, or some other suitable place, for two weeks during the summer vacation, to commence the day after the close of school in spring, unless the court should fix a different time. The court then entered an order to help preserve the property, and appointed a receiver to look after it, collect the rents, and to pay out of the funds coming into his hands the amount plaintiff was indebted to the defendant.

The defendant appealed from this order to this court August 21, 1935. Then another application was made at the instance of the plaintiff, for an order entitled ''ex parte order'', on the 21st of August, 1935, for a further hearing, and to produce the children in court. Defendant put up an appeal to provide for a stay order, and the stay order was granted for proceedings in that court, and the cause advanced.

The testimony in the case shows that during practically the whole time after the birth of her children they were away from home, being cared for and supported by the father of defendant. It fails to show satisfactorily that plaintiff was in a position to furnish the children a good home. On the other side, the evidence shows that the defendant is furnishing the children a good home; that she can take care of them, and they are well taken care of. No one testified to anything being said to the children derogatory to their father; that the children are in school, and attend church; have been happy and contented. That the mother cares for them properly, and their stepfather, Mr. Anderson, is very much attached to them; that he is a representative in the engineering department of the city of Des Moines, and draws $104 a month. He himself says that he is very much attached to the children, and is raising them to the best of his ability. It shows that the children were taken to Leon, Iowa, by the defendant's husband, and they were told they could go wherever they would; that they were on the street where plaintiff lives, and they were asked if they wanted to see their father, and the children said, ''No.'' Mr. Anderson said his view of children was that you can not bulldoze them around and expect them to love you; you have to give them a chance to express themselves and live and learn. Personally, he had never given it much consideration because the children were content, and to him it was not a problem. Asked by the court, ''You may have the misfortune of a separation from your wife?'' and he

answered, "She's too grand for that." He said it never entered his mind to be sensitive that his wife had a former husband; that it caused plaintiff's name not to be mentioned in the home. He said he thought the children thought more of him than his own son; that his brother and sister had children of their own, and could not get over it; that he was flattered and honored.

In the supplemental decree of the court made in December, 1934, there was the following clause:

"In case defendant herein fails to observe the above orders of court, then that upon application of the plaintiff, and hearing, and proof showing said violation, the Court will enter an order changing the custody of the minor son of the plaintiff and defendant, giving the custody of said minor son to the plaintiff, and make such other and further orders as to the custody of the children * * * as the Court may find just and equitable in the premises."

An appeal was taken from these orders to this court; so it will be seen that the question that arises in this case turns on the custody of the children, and as to the father having the absolute right to come and get them and have them with him at the times fixed in the order.

■■■ The real rule is that it is the welfare of the children that is to be taken into account. It is not what the parents wish, but the welfare of the children. We think this record absolutely supports the proposition that the defendant should have the care, custody, and control of these children; that she is the only proper and fit person to have such custody and control; that there is an affirmative showing that the plaintiff is not a fit and proper person to have the care of the children. For years, while they lived in South Dakota, the grandfather had them most of the time; that before he commenced the divorce case plaintiff had his wife sign an agreement as to the custody of the children, absolutely relieving him of any responsibility for their keep, turning her loose without a dollar in the world that she could lay her hands on outside of an appeal to her father to take care of the children, who had been brought into the world as a result of the union of these two people. That plaintiff has been vicious toward his wife, particularly in the insinuations, and in the pleading he filed in which he set forth insinuations and slurs against his former wife, which has no support whatever in the

record, and which he would have supported had he been able to find evidence of it. That the insinuation contained in his petition, that the daughter was of the adolescent age and needed the attention of a *good, wholesome* and *virtuous* woman to take the place of her mother, and that she was not getting such attention, was not supported by the record. This record absolutely disputes the insinuation. Such insinuations are born of a vicious turn of mind, shows a desire to injure, and is absolutely against the entire record in this case, which shows that the children have the best kind of a home.

Our courts have had something to say on this subject. Hullinger v. Hullinger, 133 Iowa 269, 110 N. W. 470, says a decree providing that a divorced husband may have the custody of the children only at stated periods and with their consent will not be so modified on appeal as to permit him to have them at such times regardless of their consent, where it appears that they thoroughly dislike the father and there is no showing that the mother or any one else with her knowledge and consent is influencing the children against him.

Youde v. Youde, 136 Iowa 719, 114 N. W. 190, says that a decree of divorce awarding the custody of minor children to one of the parents is a finality, subject to modification only upon a showing of such a change in circumstances as makes a change in the custody of the minor expedient.

Here the court in its original decree, notwithstanding the charges of the plaintiff in the case, gave the custody and control of these children to the mother. True, he provided for some rights of the father to visit and see them. The court refused to change it on order.

Bennett v. Bennett, 200 Iowa 415, 416, 203 N. W. 26, lays down the same rule, and says whether the court order should be changed may be materially controlled by a consideration of the difficulties which the parties have experienced since the entry of the order, and which relate to the welfare of the child.

Plaintiff in this case confessedly, by the undisputed testimony, was perfectly willing to have the father of the defendant support the children up at Sioux Falls, S. D.; to keep them there practically all the time. His fatherly affection did not seem to be as great then as now. It looks to this court as though from the record he is trying to dodge what he is morally liable to do for the children. He seemed to be perfectly willing for the

defendant to have the custody of them prior to the divorce when he got the agreement out of her by force, or otherwise, that she would take the children but get no "keep" money from him.

■■■ The court in this order appealed from provided that the new payment of $10 a month should cut off all past-due support money awarded. This the court had no power to do. That was retrospective. This $28 a month was to go to the mother, to be paid monthly, and anything that was due under that order no subsequent court could modify or touch.

Roach v. Oliver, 215 Iowa 800, 801, 244 N. W. 899, while conceding the right of the court by reason of changed conditions warrants the granting of the decree in the exercise of equitable principles, even in such a proceeding, the accrued and unpaid payments for alimony and for support of the children are beyond the power of the court to modify; citing Kell v. Kell, 179 Iowa 647, 161 N. W. 634; Delbridge v. Sears, 179 Iowa 526, 160 N. W. 218; Morrison v. Morrison, 208 Iowa 1384, 227 N. W. 330; Guisinger v. Guisinger, 201 Iowa 409, 205 N. W. 752.

So we think the father in this case has shown such an utter disregard for his duties as a father that he is willing to vent his spleen on his wife by taking the children away from her if he can; he has shown himself to be an unfit and improper person to have the care, custody, and control of the children.

In Ladd v. Ladd, 188 Iowa 351, 176 N. W. 211, 212, this court said on this subject:

"Manifestly it is highly desirable and for the best interest of this boy that his life be settled in some home under the most favorable circumstances. * * * So far as his future custody is concerned, his best interest is paramount to any right of his father to his custody."

Having seen no evidence of affection of the children for the father, and none of the father for the children, except his own say-so, and that exhibited only to injure his wife, the mother of his children, we agree in what the court said in Hullinger v. Hullinger, 133 Iowa 269, 110 N. W. 470, in regard to forcing a boy to remain with the father two weeks at a time, that it was not likely to result in a change of feeling toward the father; and, if such were not the result, it would be a positive injury to the boy.

In this case the children were taken to the town of Leon,

Iowa, to the street on which their father, plaintiff, lived, and they said they did not want to see him. The father saw the boy at the home once when he was up there; he called the boy over, but he would not come. These children must remember that when they lived at Canton, S. D., a greater part of their time was spent with their grandparents, their mother's parents, who looked after them. The whole record shows they are now in a good home; that they are being well taken care of; and for that reason this plaintiff should not be allowed to have their custody at any time, at least until something different appears.

The part of the order of the lower court cutting down the support money to $10 per month for the two children we will allow to stand until the further order of some court having jurisdiction to determine the matter, as we believe he should give something to the support of these children until they reach the age of 18 years.

So we think this case should be reversed, with instructions to the lower court to enter a decree dismissing the supplemental petition, leaving the children in the care, custody, and control of the mother, without the right of the plaintiff to insist upon having their company until at least he has shown that he is the proper party to have them; that the orders should be so modified as to conform with this decree in reference to this, and with reference to the unpaid portion of the support money originally decreed. There was some small property, probably not worth much, put in the hands of a receiver; while it might not have been the best thing to appoint a receiver, we believe it would work out better than for these two parties to handle it jointly. So the opinion is reversed, with instructions to enter a decree in the court below in accordance with these instructions, or, if the defendant so elect, a decree may be taken in this court.—Reversed.

DONEGAN, C. J., and KINTZINGER, POWERS, ALBERT, and MITCHELL, JJ., concur.