CAROL J. FREESE, Appellant, v. ALVA H. FREESE, Appellee.

No. 46812.

APRIL 2, 1946.

Smedal & Maurer, of Ames, for appellant.

M. J. Walsh, of Ames, and Locher & Locher, of Monticello, for appellee.

MILLER, J.—In May 1935, appellant (referred to as Carol) was graduated from high school at Monticello, Iowa, and on August 11, 1935, she married appellee (referred to as Alva), a young farmer with an eighth-grade education. They were living on a one-hundred-sixty-acre farm in Jones county in October 1940, and had two daughters: Sharon, born September 30, 1937, and Karen, born February 8, 1939. At that time Carol left the home and thereafter resided in Ames with her sister and her sister's husband. On March 18, 1941, Carol was awarded a decree of divorce, by default, on the grounds of cruel and inhuman treatment. The decree made no allowance of alimony and the only reference to the two daughters was as follows:

"It is further ordered that the plaintiff will have the right and privilege of visiting the minor children of the parties at reasonable times and places."

The decree also provided that Carol pay the costs. On December 3, 1941, Alva married Dorothy, his present wife, at Kahoka, Missouri. They have a son, John, born to them July 6, 1944. On March 22, 1942, Carol married A. H. Montgomery, her present husband, at Ames. They have a son, Mike, born to them about January 1943. All four children above named were living at the time of trial herein.

On November 22, 1944, Carol filed a petition for modification of the divorce decree herein, which recited the entry of said decree and asserted: No adjudication was made therein as to the custody of the two daughters, Sharon and Karen, or as to their maintenance; Carol was without means to support her children when the decree was entered; she has remarried, lives at Ames, is able to provide for the children in a suitable home; her husband joins in soliciting custody of said children; there has been a material change in the situation of the parties with respect to the custody, care, control, and maintenance of said children since the entry of the decree of March 18, 1941. The prayer was that the court determine that there was no final adjudication with respect to the custody of said children, and that the care, custody, and control of them be awarded to Carol with a suitable allowance for their support; or that the court find that a material change in the circumstances exists as compared with

March 18, 1941, and that Carol be awarded custody of Sharon and Karen with a suitable allowance for their support.

Alva's answer to said petition admitted the allegations as to the entry of the decree of divorce and Carol's remarriage, denied the allegations asserted in support of Carol's claim for present custody of the children, and asserted: The decree was obtained by fraud in that Carol knew that Alva had not been guilty of cruel and inhuman treatment; the decree made a final adjudication as to the custody of Sharon and Karen, with the right of visitation given to Carol; there has been no such change in the circumstances of the parties as to warrant a modification of the decree as to custody of the children; Carol voluntarily abandoned the children and is not a fit and proper person for their care and custody; Alva has had the care and custody of the children since Carol abandoned them and is able and competent to support them and give them care, education, etc. The prayer was that the petition for modification be dismissed.

Carol's reply to Alva's answer denied that the decree was obtained by fraud and asserted that Alva's allegations constitute a collateral attack on a final decree that was not appealed from; denied that the decree determined the custody of the children; denied that any such determination would bar these proceedings; denied that she had abandoned the children or that Alva was a proper person for their custody.

Trial commenced on January 17, 1945. The evidence is very voluminous, comprising approximately two hundred seventy pages of the printed record herein. On the issue of Carol being granted relief because of an alleged change in the circumstances of the parties, the trial court determined as follows: The petition for divorce made no issue as to custody of the children, acknowledged that they resided with Alva, and prayed only for the right of visitation which was granted by the decree; the changes in circumstances asserted herein are two: Carol's present financial ability to care for the children and her new home established following her remarriage; these two factors would hardly warrant a change in custody under the rules applied in Daniels v. Daniels, 145 Iowa 422, 124 N. W.

169, and Bennett v. Bennett, 200 Iowa 415, 203 N. W. 26, nor would the fact that Alva's remarriage took place in Missouri, under the rules announced in Dudley v. Dudley, 151 Iowa 142, 130 N. W. 785, 32 L. R. A., N. S., 1170; were this case to be decided on the statutory ground (section 10481, Code, 1939) of a subsequent change in the circumstances of the parties, as interpreted by Neve v. Neve, 210 Iowa 120, 230 N. W. 339, Carol has not met the burden of proof resting upon her. But the trial court felt that the custody of the children was too vital and the question whether the original decree actually was a judicial determination as to their custody was too close to warrant disposition of the case on that narrow ground and it undertook to dispose of the case as though there had been no previous adjudication as to custody.

In reviewing the record in its broad aspects, the high lights of the trial court's summary are the following: The parties were married in 1935; Carol had recently been graduated from high school in Monticello; she was the eldest of seven children in her family, was seventeen years old, fourth in rank of her class; Alva was two years her senior, a farm boy with an eighth-grade education; their marriage was approved by both their families; Alva had worked on the farm with his father, having no other training; Carol must have contemplated that she would be a farmer's wife and mother of a family; in 1936 their first child died within a week of birth; on September 30, 1937, Sharon was born and on February 8, 1939, Karen was born; shortly after Karen was a year old Carol announced that she was leaving the home; this she did in October 1940, trusting three-year-old Sharon and eighteen-months-old Karen to the awkward, unskilled, but willing efforts of Alva, supplemented by such hired assistance as he could procure; he obtained the services of his sister, Mrs. Walton, until the following March, when Mr. and Mrs. Bryan succeeded her; in December Alva married his present wife, Dorothy; in the meantime Carol went to Ames, where she obtained employment and lived with her sister, returning a few days before Christmas 1940 for a brief sojourn with the family; Alva visited Carol several times at Ames and attempted a reconciliation but the divorce fol-

lowed in March 1941; Carol remarried in March 1942, has a home of her own under apparently auspicious circumstances, a devoted husband and a son, Mike; Alva's remarriage also appears to have been successful, the two girls are apparently happy in their reconstructed home. Alva is progressing and may be rated as a successful farmer; nothing inherently wrong can be found with respect to either domestic establishment.

The trial court analyzed Carol's position thus: Her first claim is based on the preference of a mother; this preference is jealously guarded by the law, but that would be particularly true when the children were eighteen months and three years old, respectively; at that time Carol left them and made no aggressive claim to their custody until four years later; her explanation that she was ill-advised or ignorant of her rights is very questionable when consideration is given to her correspondence with Alva; that her leaving of the children was the result of mature consideration appears certain from a letter which stated: "Alva, do you remember a promise we made to each other just before I came to Ames? I promised never to take the children away from you if you would let them be with me a part of the time as soon as I was in a position to have them, also I would never by word or deed try to turn them against their father and you were to have the same consideration for their mother"; Carol's explanation that her life was intolerable because of frequent pregnancies, heavy chores, and unreasonable criticism is weakened by the fact that she did not seek the generous protection which the law gives a wronged woman to the right to the care and custody of her children.

Alva's position is thus summarized: Things seemed to be going well until June 1940, when he objected to familiarity between Carol and one Hoffman; her response was that Alva was "old fashioned" and that the incidents did not mean anything; Alva seemed to fear that he was losing Carol's affections but the "pitched battles" one would expect to arise from such a situation are apparently wanting; Carol admitted that, after her leaving, she was in correspondence with Hoffman, borrowed $20 from him, which was repaid, arranged to meet him at Clarence, Iowa, and with one McDonald went to Chicago, spent Saturday at the apartment of Hoffman's mother, under her

chaperonage, spent Saturday evening at a public dance, left Sunday morning for Cedar Rapids and called Alva to meet her and bring her home for the Christmas holidays.

The trial court was inclined to agree that no statutory offense was committed by Carol but found that she had been daring, audacious, and probably indiscreet; at least, she was sufficiently modernistic to permit the spirit of nonconformity to initiate a division of her attention; statutory offenses are not the only home breakers; the romantic atmosphere is difficult to maintain along with the slightest trifling, thrill-seeking, or spirit of adventure; Carol seems to have let sufficient division of her attention occur to create the very situation of which she complained, "that she liked Alva, but didn't love him any more"; when she was determined to leave Alva, strenuous efforts by relatives and their pastor were unavailing and when she bade good-bye to Karen in the house and to Alva, holding Sharon's hand in the yard, it was a tearful occasion; a major crisis was created in the lives of two infants; all the security which was theirs to know was shaken to its very foundations; Carol is now ready to resume her full responsibility but such situations do not remain static; motherhood is something with respect to which it is difficult to take a holiday; it can be taken only with the incidental formation of new and substituted attachments; to break such cannot be done lightly; the advent of such new attachments to the stepmother Dorothy is not a matter of surprise; the ripening of such relationship must be undone if Carol's plea be granted; that Dorothy has been successful in her trying situation is nowhere questioned in the record; Carol contributed to the necessity which required these children to adjust themselves to a new situation; this readjustment has been as effectively accomplished as could be expected.

In answer to the question whether it is for the best interests of these children to subject them to another similar experience and strain, the trial court answered that it would be a disservice to the interests of the children to require them to again pass through a comparable disorganizing experience. As to the right of visitation, the court determined that the parties themselves had, apparently from the beginning, contemplated

that the custody should be in Alva with part-time visitation in the new home of Carol, if and when that were possible; for two years this has been tried with no visible undesirable results; the feasibility and wisdom of such an arrangement is very questionable; only in deference to the past attitude of the parties themselves and with confidence in their continued good faith to recognize the co-operation on the part of both families that is vital to the future of these two fine girls did the court permit it to be continued.

The trial court specifically found: The best interests of the children require that their custody and care be not changed and that it remain with Alva; the children shall visit Carol's home for that interval of the summer vacation between the first two weeks and last two weeks of that period, and for ten days during Christmas vacations, subject to further review should Carol remove from Iowa; Alva should provide for taking the children to Carol's home and Carol should provide for their return; each party should pay the fees of his own witnesses and the remaining costs to be paid by Carol. Decree was entered accordingly on March 5, 1945, from which Carol has appealed to this court, asserting four propositions for reversal.

I. Appellant's first proposition is that the court erred in admitting evidence of alleged misconduct on her part while married to appellee because it constituted a retrial of the divorce action in which a final decree had been entered. However, appellee did not seek to set aside the granting of the divorce and makes no such attack on that decree in this court. The evidence was offered to give the trial court a complete picture of the situation as it bore on the custody of Sharon and Karen. While the opening of the floodgates produced a mass of testimony, some of which is of no consequence on the vital issues of the case as we view it, we are not disposed to reverse on this ground. The trial court had a wide discretion and, as the case is before us de novo, we are at liberty to disregard that evidence which we feel is not relevant or material and to determine the case solely on the evidence that bears upon the decisive issues in the case. In our view of the case, the decisive evidence pertains to the occurrences which followed the separation of the

parents. Hence we do not specifically pass upon the competency of the evidence that appellant challenges.

■ II. Appellant's second proposition is that cruel and inhuman treatment such as to endanger life is cause for divorce and a false charge of unchastity and infidelity may be such cruel and inhuman treatment. Decisions of this court support such a general statement. Williges v. Williges, 215 Iowa 960, 962, 247 N. W. 222. From this premise appellant contends that the decree of divorce should have awarded custody of the minor children to appellant and that the court erred in failing so to do. But the party to whom the divorce is granted is not, by that fact alone, entitled to the custody of the children. Roach v. Roach, 213 Iowa 314, 323, 237 N. W. 439. Appellant's contention also ignores the fact that appellant acquiesced in appellee's custody of the children for three and one-half years after the divorce was granted. In determining what may be for the best interests of the children, that period and the events which transpired during it were apparently given preferential treatment by the trial court and we are disposed to agree that they are of vital importance. Hence we hold that appellant's second proposition does not go to the heart of the case and therefore does not present a basis for reversal herein.

■ III. Appellant's third and fourth propositions, when considered together, do go to the heart of the case. We will therefore treat them together. The third proposition asserts that the overwhelming evidence shows material subsequent changes in circumstances that should have persuaded the court to award custody of the children to appellant. The fourth and final proposition is that, under the record herein, the findings of the court are not supported by the evidence and the judgment and decree constitutes an arbitrary exercise of judicial discretion. Considering these two propositions together, we hold that they present the vital question in the case: What is for the best interests of Sharon and Karen in regard to their future custody as between appellant and appellee? Appellee answers this question by the assertion that the welfare of the children is superior to the claims of the parents. This court has repeatedly so held. Neve v. Neve, 210 Iowa 120, 126, 230 N.

W. 339; Bennett v. Bennett, 200 Iowa 415, 417, 203 N. W. 26; Ladd v. Ladd, 188 Iowa 351, 355, 176 N. W. 211; Reeves v. Reeves, 205 Iowa 215, 217 N. W. 823. When we consider the best interests of Sharon and Karen as being paramount to the parental rights of either Carol or Alva, we fully agree with the result reached by the trial court herein.

The view we take of this case renders it unnecessary to consider the evidence of which appellant complains as stated in Division I of this opinion, supra. That evidence is used as a basis for charges and countercharges, rather sordid inferences and insinuations, too often present in matrimonial controversies of this character. The best interests of these children inspire the hope that their parents may "let the dead past bury its dead."

█ While appellant insists that the changes in the circumstances of the parents support her contentions, the able trial court wisely considered that the changes in the circumstances of the children were of more vital significance than those of the parents. As heretofore stated, with keen insight and broad understanding, it pointed out that, without regard to the merits of the family quarrel between the parents that resulted in their separation, Carol did contribute to the situation when she left the home and thereby created a crisis in the lives of Sharon and Karen when they were but little tots. Of this the court states:

"But it is said, that is all past, and much can be said for it. But nevertheless, what occurred created a major crisis in the lives of two infants. All of the security which was theirs to know, was shaken to its very foundations. Again it is said, that the arrangement was temporary and she is now ready to resume her full responsibility. However, such situations cannot and do not remain static; when old attachments of a child are torn asunder or at least seriously strained, new and more secure ones are made. This rests in the necessities of nature itself. The only real parental security which these children have known for almost four and one-half years was that of Alva. The day to day contact, the natural dependence for minor crises,

the confident reliance incident to constant association, and hourly contact, to which a child is entitled, were found only in Alva. Is it for the best interest of these children, to subject them to another similar experience and strain? In other words motherhood is something with respect to which, it is very difficult to take a holiday; it can be taken only with the incidental formation of new and substituted attachments. To break such cannot be done lightly.

"Involved in these new and substituted attachments are those which have taken form with respect to Dorothy Freese, Alva's present wife. That such a person should come into a situation of this type is not a matter of surprise. The possibilities of such an arrangement, if successful, presented greater advantage to these infants, than what could be reasonably expected from temporary situations that might be improvised from time to time. Since December, 1941, she has been required to provide for their intimate care and serve as a close associate. The ripening of such relationships must be undone if the plea of the plaintiff is granted. That this stepmother has been successful in her ordinarily trying situation is nowhere questioned in this record. It is not unreasonable to charge the plaintiff with knowledge of such a developing situation.

"The court is constrained to hold that she contributed to the necessity, which required these children to adjust themselves to a new situation. That this readjustment has been as effectually accomplished as could be expected. It would appear therefore to be a disservice to the best interest of these children to require them to again pass through a comparable disorganizing experience."

We agree with the able trial court that Carol did contribute to the crisis in the lives of Sharon and Karen that is so eloquently described in the foregoing quotation. Her correspondence demonstrates that she did so deliberately of her own volition and she must be held to the knowledge of the possibility that a new situation would develop much as it has. It would be a disservice to the best interests of these children to require them to again pass through a comparable disorganizing experi-

ence. This court is just as opposed to ordering such an ordeal as was the trial court.

The cause is—Affirmed.

BLISS, C. J., and OLIVER, HALE, GARFIELD, SMITH, MANTZ, and MULRONEY, JJ., concur.

WENNERSTRUM, J., takes no part.