CECIL AXLINE, Appellee, v. NADA AXLINE, Appellant.

No. 46911.

OCTOBER 15, 1946.

O'Brien & Molloy, of Independence, for appellant.

Roy A. Cook, of Independence, for appellee.

PER CURIAM.— The record before us is somewhat unsatisfactory. The record was not settled by the trial court nor was it settled by stipulation of counsel. A certificate of counsel for appellant, similar to that required for an abstract of the record prior to the adoption of Rule 340 of the Rules of Civil Procedure, is set forth. This does not constitute compliance with said Rule 340. However, the case has been fully argued and submitted without any objection by appellee or his counsel. We do not like to condone such practice, but, in the absence of any complaint by appellee, we assume that counsel on both sides consider that the record that is before us is correct. Unfortunately, it does not give a clear picture of the facts upon which a decision should be made.

In the pleadings it is asserted that Cecil and Nada Axline were married December 6, 1929, were divorced April 21, 1943, and remarried in September 1943. While the testimony does not establish these facts it indicates that they may be substantially correct. In August 1945, Cecil commenced an action for divorce. The ground stated was that Nada had been guilty of adultery with one Ralph Cornwall. An amendment to the petition was filed striking out the charge of adultery and substituting therefor the charge of cruel and inhuman treatment. On September 10, 1945, Nada not having appeared and default being entered against her, the court entered a decree of divorce in favor of Cecil. Pursuant to a stipulation signed by Cecil and Nada the court awarded Cecil the homestead and Nada the household goods and kitchen furniture and awarded the custody of their three sons—William, aged thirteen, Duane, aged ten, and Walter, aged four—to Cecil with a provision as stipulated that "as long as plaintiff approves the care given the children by the defendant, the defendant may care for

them for the plaintiff at a rate of compensation mutually agreed upon by the parties.''

On January 19, 1946, four months after the decree was entered, Nada filed an application to modify the decree, which asserted that Cecil had neglected to provide any care or support for the children and had refused to surrender their custody to her and asked that she be given their custody and a reasonable amount for their support. Resistance was filed thereto by Cecil.

Nada testified that she and her children live with Ralph Cornwall and his son; Cornwall pays her a weekly sum for himself and his boy and she does about four washings a week which average about $1.50 to $2; Cecil has not contributed anything for the support of the children since the decree was entered; ''He said that I had them now and I could support and take care of them''; at the time of the trial William and Walter were with Nada and Duane was with Cecil's sister; William has a paper route which nets him $4.50 to $5 per week. As to Duane, Nada testified:

''I would rather his father keep him, because he has told him that he doesn't have to mind me and he has put him up against me, so that he doesn't mind me, and I don't think it is fair either. I have trouble with him and I would rather his father keep him. If his father doesn't, I will take him and do the best I can with him.''

Cecil testified that in September 1945, when the divorce was granted, Nada was receiving $120 per month allotment from the government. Cecil was then in the Army. Later he was discharged and, at the time of this hearing, was averaging $30 per week working at Rath Packing Company in Waterloo. Since the decree he has bought Duane and Walter some clothes and has given his sons some small amounts of money. He admitted that he had given Nada no money. He refused to do so because she was living with Cornwall and was not married to him. There is no evidence what relations exist between Nada and Cornwall. Except for Cecil's statement as to his suspicions the record is silent. On examination by the court, Cecil testified:

"Q. She has had the children since the divorce, have you ever talked over anything with her about what you should pay for the support of the children? * * * A. I asked her what kind of agreement would you like to make, and * * * she says, 'What do you think about it?' and I says, 'It's up to you,' and I says, 'I don't want you to take care of the children if you aren't married and have them living right here,' and she just turned around and walked off into the house. Q. You knew if she kept the children you were to pay her something for it, didn't you? A. Yes sir. Q. And she has borne all of the expense, shelter and clothing and nursing, and all that, and ever since the divorce, hasn't she? A. Well, two of them, yes. * * * Q. What do you get at Rath's since you got out of the army? A. It averaged around $30 a week. I have the stubs here with me. Q. Around thirty? A. Yes sir. Q. Are you dissatisfied to have these two children with her? A. I am as long as they are living that way. Q. If they would get married, it would be all right? A. Yes sir."

Cecil is living at Waterloo with his father and mother. His proposal to the court was that William and Walter live with Cecil's parents at Waterloo, that he had talked it over with his mother and she approved it. Cecil's mother testified that she was willing to take care of the children without expectation of compensation.

In dismissing the proceedings, the trial court determined as follows:

"That there is no such substantial change in the conditions of the parties since the rendering of the said decree, and no circumstances that would justify modification of such decree; and the court finds as a conclusion of law that the original decree is conclusive upon the parties; that the power to grant a modification is not a power to grant a new trial or try the same issues, and that unless there is a material change in the conditions and circumstances of the parties the court has no right to modify the decree."

The appellant contends that the trial court erred in refusing to modify the decree because by its terms it is indefinite and unenforceable and in finding as a matter of law

that there was no such substantial change in the circumstances of the parties since the entry of the decree of divorce that would justify modification thereof. We find that there is merit in such contention.

The proceedings herein are had pursuant to the provisions of section 598.14, Code, 1946 (section 10481, Code, 1939), which provides as follows:

"When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. Subsequent changes may be made by it in these respects when circumstances render them expedient."

One of the decisions of this court construing said statute, upon which the trial court relied, is that of Newburn v. Newburn, 210 Iowa 639, 641, 231 N. W. 389, 390, wherein we stated:

"The statute, Section 10481, authorizes the court, upon proper application, after a divorce decree has been granted, to modify the same, upon proof of substantial changes in the circumstances of the parties which render such modification expedient. This statute has been many times considered and applied by this court. It has always been held that the original decree is conclusive upon the parties as to the then circumstances of the parties, and that the power to grant a modification in the decree is not a power to grant a new trial, or to retry the same issues, but only to adapt the decree to the changed conditions of the parties. [Citing cases.]"

Another decision upon which the trial court relied is that of Toney v. Toney, 213 Iowa 398, 400, 239 N. W. 21, 22, wherein we stated:

"It is also the rule of Iowa that facts and circumstances must be shown by the party seeking a modification of a decree awarding alimony that will warrant the court under equitable principles to justify a finding that there has been a change in circumstances such as to make a modification equitable under all the facts and circumstances of the case. Morrison v. Morri-

son, 208 Iowa 1384. See, also, McNary v. McNary, 206 Iowa 942.''

The principles set forth in the foregoing quotations are well established by repeated pronouncements of this court, but, in applying them, there are factors presented by the record herein which should have been given more consideration than they received from the learned trial court.

In Slattery v. Slattery, 139 Iowa 419, 422, 116 N. W. 608, 609, in discussing the effect of the court's approval to a stipulation of the parties in a divorce decree, we stated:

''We quite agree with counsel for appellant that a husband and wife, involved in divorce proceedings, may arrange between themselves for the disposition of their property interests and the custody of their children; and effect will be given by the court to a stipulation, if entered into in good faith and the provisions thereof are found to be fair and reasonable. This we have frequently said. Blake v. Blake, 7 Iowa, 46; Martin v. Martin, 65 Iowa 255; White v. White, 75 Iowa, 218. But parents cannot, by contract entered into between themselves, put one or the other beyond all responsibility for the support and maintenance of their offspring. Irrespective of any rights which might arise from such a contract, personal to the immediate parties, the children have rights which must be respected by their parents; and the courts, in the interests of the children and of the general public, will enforce such rights whenever it becomes necessary to do so. Accordingly, where the custody and maintenance of children is provided for by contract, it is within the power of the court, acting in authority of the statute, to set aside the contract and to decree such provisions in lieu thereof as the interests of the children shall seem to demand.''

In Mitvalsky v. Mitvalsky, 191 Iowa 8, 11, 179 N. W. 520, 522, we stated:

''The two children of the parties were, at the time of the trial, two boys, aged 9 and 5, respectively. Their custody was awarded the mother, and with it went an allowance of $15 a month for the support of each child. In a sense, the

defendant confesses that this is inadequate, because he asserts that he is willing on his own motion to provide more. He does not seem to have done so, to any substantial extent at least. And he is in court resisting a larger allowance. At any rate, it should not be a matter of grace in the father to provide sufficiently for the decent maintenance of his children. He has not been divorced from his children. * * * We are unable to see why the fact, if it be one, that the allowance for the children was, in effect, a consent decree, opposes our conclusion. The necessity for changing a consented-to allowance may be as imperative as if the allowance were wholly the act of the court.''

We think that the effect of the ruling of the learned trial court herein is to make the support of these children by their father too much a matter of grace on his part. The decree did not end his obligation to provide for their care. The record indicates that the children will be taken care of in one way or another but there is no specific provision thereon. In view of the situation that has developed, we are of the opinion that specific provision should be made thereon.

We have held repeatedly that, in cases of this kind, the best interests of the children are paramount. Freese v. Freese, 237 Iowa 451, 459, 22 N. W. 2d 242, 246, and cases cited. The decree of divorce herein granted custody to the father and contemplated that the children would be cared for by the mother at a rate of compensation to be mutually agreed upon. Cecil refuses to pay anything unless Nada marries Cornwall. If that occurs, then he is willing for her to care for them and apparently would consider making some contribution therefor. But unless the marriage takes place Cecil will not contribute to the support of the children. If that is not satisfactory to Nada, then Cecil will let his mother care for the children, which she states she will do without expectation of compensation.

The apparent indifference displayed by Cecil toward his children is difficult to understand. The record is meager as to what was the situation at the time that the decree was entered. About all that is shown is that the court contemplated

1058

that Nada would care for them as long as Cecil approved and that Cecil would pay a reasonable amount of compensation to Nada. It now appears that Cecil intends to delegate the custody to his mother, and perhaps his sister, but there is no specific arrangement as to what will be done nor does Cecil assume any specific obligation toward his children. He impliedly confesses that he cannot care for them himself. Such being the case, we are of the opinion that the court should have clarified the decree and made specific provision for their care. See Dunham v. Dunham, 189 Iowa 802, 178 N. W. 551.

While this cause is triable de novo here, the record is too meager to enable us to determine what should be for the best interests of the children. Accordingly, the order appealed from is reversed and the cause is remanded with directions that further proceedings be had to enable the court to determine what is for the best interests of these children and that specific provision be made for their care and custody and we suggest the trial court consider the question of a temporary allowance for the support of the children pending further proceedings.—Reversed and remanded with directions.

The foregoing opinion, written by Justice MILLER before his retirement from the court, is adopted as the opinion of the COURT.

HAYS, J., takes no part.