LETA BEYERINK, Appellant, v. LAMBERT J. BEYERINK, Appellee.

No. 47338.

(Reported in 35 N. W. 2d 458)

JANUARY 11, 1949.

Carlos W. Goltz and Fred S. Nordenson, both of Sioux City, for appellant.

Stewart & Hatfield and Raymond Whitmer, all of Sioux City, for appellee.

BLISS, J.—Section 598.14, Code, 1946, is as follows:

"Alimony—custody of children—changes. When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right.

"Subsequent changes may be made by it in these respects when circumstances render them expedient."

Prior to August 19, 1946, the parties were married and lived with their minor daughter, Marilyn, in Sioux City, Iowa. On said date, on petition of plaintiff, a decree of divorce from defendant was granted plaintiff on the ground that defendant had been guilty of such inhuman treatment as to endanger the life of plaintiff. The decree in accord with the written stipulation of the parties provided that it should constitute a complete adjudication that plaintiff should "have the sole care, custody and control of the minor child, Marilyn, with leave to the defendant to see and visit said child at reasonable times and places." The stipulation and decree provided that defendant, on each Monday should pay to the clerk of the district court of Woodbury County, Iowa, the sum of $11, for the use and benefit of plaintiff in supporting said child, until she attained her majority, or until further order of the court. The decree provided that neither party should marry within one year from the date of the decree.

A few days after the entry of the decree, plaintiff, with her child, went to the little town of Gray, Iowa, less than one hundred miles from Sioux City, where her mother, sisters and other close relatives lived, to make her home. She testified, without any denial from defendant, that although she would have preferred remaining in Sioux City, she left because defendant threatened violence to herself and Marilyn if she did not get out of Sioux City.

In February 1947, defendant married his present wife at Ponca, Nebraska. On July 31, 1947, under the statutory pro-

vision quoted above, defendant filed his application praying for such modification of the divorce decree "as to the court may seem just and right in the premises relative to his rights to see his said minor child." The only ground for the relief and the only change or circumstance subsequent to the divorce decree alleged in the application which might have any tendency to render a modification "expedient" is the following: "That since the entry of said decree the plaintiff has moved to Gray, Iowa, and that upon the defendant making trips to Gray, for the purpose of seeing his minor child, the plaintiff has refused to permit defendant to see his child."

In the resistance filed by the plaintiff this allegation is expressly denied. In addition plaintiff made numerous affirmative allegations charging that after the divorce defendant had threatened to kill her, and that on his last visit to Gray he told plaintiff that he had beat her out of money in the divorce case; that he was now going to take the little girl away from her and that if he got the child she would never see her again, and that as long as she and the child lived both of them would be in his way. She alleged that defendant was neither a fit nor proper person to have the custody of the child for any period of time.

Defendant filed no reply denying these allegations. There was much testimony, not only by plaintiff, but from other witnesses, amply sustaining the allegations of the resistance. Defendant was a witness, but he denied none of this testimony.

The evidence establishes that plaintiff lived with her relatives for a time and clerked in a grocery store. In September 1947, she began teaching in a country school, but lived in Gray with Marilyn in a comfortable home with modern conveniences. Marilyn attends school in town. In 1946–1947 she was in the kindergarten grade, and at the time of the trial she was in first grade and on the Honor Roll. She is happy, healthy and carefree. There is evidence that before the divorce his conduct toward the child was such that she was afraid of him.

He made three trips to see the child. The first time Marilyn was at her grandmother's home, the little girl on seeing him enter the yard ran crying into the house and hid in a bedroom.

The grandmother was gracious to him and tried to coax the child to come out, and then asked defendant to go into the bedroom and see Marilyn, but he declined. The next time defendant called he went to plaintiff's aunt's home where she and Marilyn were living. He testified that the aunt and uncle treated him with much courtesy and asked him to come in, and then they called plaintiff and Marilyn, and that while he saw Marilyn, she cried and would not visit with him. On his third visit, which was a day or two before her birthday in August 1947—after this proceeding was started—he and his wife drove to the aunt's home in Gray. Marilyn was at the store with her mother. On this occasion she came to him to get his presents, but, he testified that she was crying, trembling and frightened.

On each occasion when he called there was no hindrance by plaintiff or any of her family to his seeing the child. The difficulty was the child's fear of him. There is no evidence that plaintiff or her sisters, mother or aunt ever tried to turn the child against her father. The evidence is all to the contrary. Each time he came without notice to plaintiff.

The trial court modified the divorce decree by ordering that defendant should have Marilyn for one week during the Christmas holidays and for two weeks during the summer vacations.

I. The power of the trial court or of this court under said Code section 598.14 should be exercised only when there is a material and substantial change of condition or circumstance respecting one or both parties since the entry of the original decree, rendering a modification therein expedient. The original decree is a binding finality upon both parties with regard to their then existing circumstances. This has been the uniform holding of this court from Blythe v. Blythe, 25 Iowa 266, 268, 269; Fisher v. Fisher, 32 Iowa 20–22, down through Crockett v. Crockett, 132 Iowa 388, 391–395, 106 N. W. 944; Kinney v. Kinney, 150 Iowa 225, 227–229, 129 N. W. 826; Youde v. Youde, 136 Iowa 719–722, 114 N. W. 190—particularly applicable to the case before us, as is also Hullinger v. Hullinger, 133 Iowa 269–271, 110 N. W. 470; Keyser v. Keyser, 193 Iowa 16, 17, 18, 186 N. W. 438; Goodrich v. Goodrich, 209 Iowa 666, 669–

672, 228 N. W. 652; Morrison v. Morrison, 208 Iowa 1384, 1386–1389, 227 N. W. 330; Metzger v. Metzger, 224 Iowa 546, 549–552, 278 N. W. 187; Schneider v. Schneider, 207 Iowa 189–191, 222 N. W. 400; Jensen v. Jensen, 237 Iowa 1323, 1324 et seq., 25 N. W. 2d 316.

■ The only matter to be determined on the appeal on defendant's application is whether conditions have so changed since the original decree as to bring it within said section 598.14. Defendant's pleading and proof fall short of establishing such a case. The burden was on him to do so. He presented neither a printed nor an oral argument in this court. The threats, of defendant against the plaintiff, his express purpose to deprive her of the child, and the latter's fear of the defendant convince us that placing her in his sole custody even for the short periods granted by the court might be a grave injustice and of serious harm to her. We have many times held in proceedings of this kind that the welfare and best interest of the child are fundamental and paramount considerations. It is a prime factor on the issue of expedience. Lindquist v. Lindquist, 148 Iowa 259, 263, 126 N. W. 1109; Neve v. Neve, 210 Iowa 120, 122, 125, 126, 230 N. W. 339; Horn v. Horn, 221 Iowa 190, 195, 196, 265 N. W. 148; Crockett v. Crockett, supra, 132 Iowa 388, 392, 106 N. W. 944; Slattery v. Slattery, 139 Iowa 419, 422, 423, 116 N. W. 608; Bennett v. Bennett, 200 Iowa 415, 417–419, 203 N. W. 26; Freese v. Freese, 237 Iowa 451, 457–459, 22 N. W. 2d 242; Axline v. Axline, 237 Iowa 1051, 1057, 24 N. W. 2d 443; Vierck v. Everson, 228 Iowa 418, 421, 291 N. W. 865; Goodrich v. Goodrich, supra, 209 Iowa 666, 671, 228 N. W. 652; Jensen v. Jensen, supra, 237 Iowa 1323, 1324, 1325, 1332, 25 N. W. 2d 316; Ladd v. Ladd, 188 Iowa 351, 355, 356, 176 N. W. 211; Ostheimer v. Ostheimer, 125 Iowa 523, 525, 101 N. W. 275.

■ Because of the modification in the supplemental decree of the adjudication in the original decree of divorce that the plaintiff should have the sole care, control and custody of the minor daughter, Marilyn, with leave of defendant to see and visit the child at reasonable times and places, the supplemental decree is reversed with respect to said modification, and the

50

district court is directed to make proper order striking said modification and to reinstate the decree of divorce in every respect as originally entered.

II. With respect to plaintiff's application for a modification of the original decree of divorce by increasing the payments by defendant, for the use and benefit of plaintiff in supporting Marilyn, from $11 a week to $22 a week, it is our conclusion that there has been no such changes in the circumstances of the parties since the entry of the original decree to justify modification and increase. The supplemental decree insofar as it denied said application is therefore affirmed.

The supplemental decree is therefore reversed in part and affirmed in part, as herein set out, with the costs in the court below and on the appeal taxed to the defendant.—Reversed in part and affirmed in part.

All Justices concur.