EFFIE CALDWELL, Appellant, v. HERBERT CALDWELL.

Divorce: INHUMAN TREATMENT: EVIDENCE. The evidence in a divorce
action is reviewed and held to justify a decree in favor of the
wife on the ground of inhuman treatment, and that the wife was
not guilty of conduct which would excuse the husband's treatment
of her.

Same: CUSTODY OF MINORS. The mother is the natural custodian of
children of tender years and upon divorce they will ordinarily
be given to her, especially where she is not the offending party
and it appears that she is able to furnish them a comfortable
home, support and education.

*Appeal from Wapello District Court.*—HON. D. M.
ANDERSON, Judge.

THURSDAY, FEBRUARY 11, 1909.

SUIT for divorce resulted in a decree as prayed and
awarding the custody of a minor child one-half of the time
to each party, alternating every six months. Both parties
appeal; that of plaintiff being first perfected.—*Reversed*
on plaintiff's appeal and *affirmed* on defendant's appeal.

*Steck, Daugherty & Steck,* for appellant.

*Cornell & Gillies,* for appellee.

LADD, J.—I. The parties hereto were married May
21, 1898; she being eighteen and he twenty-nine
years of age. Their only child, Willie, was born May
5, 1902. The husband left for Arkansas with
the assurance that he was done with her and
would live with her no longer October 12,
1906. She now makes her home with her mother and two

1. DIVORCE:
inhuman
treatment:
evidence.

sisters in Ottumwa.   He has a room and boards in Tucum-
cari, N. M.   In the morning of the second day previous to
his departure, he knocked his wife down with his fist, jam-
med her head against the refrigerator, choked her, and in
violence undertook to drag her from the room, and when
she screamed his only response was that if she did so
again he would choke the life out of her.   She sent the
little boy for help twice, but none came.   He finally de-
sisted, but not until nearly tearing her clothes from her
person.   She was so frightened and nervous as not to re-
cover for several weeks, and all this was over getting
Willie's shoes from the next house, where they had been
left the night before.   True, defendant attempted to be-
little this affair by denying that he struck or choked her,
but he did admit that he took her by the arms and pushed
her, that she was on the floor, and that her clothes were
badly torn.   The fingermarks on her neck and bruises on
her person, as well as his statement to her mother in pres-
ence of a sister that he had knocked her down and the
wonder was he did not do worse, amply corroborated and
confirmed her story.   Added to this should be her tes-
timony that he had laid violent hands on her several times
before, was in the habit of cursing her, and, against her
entreaties, had absented himself four weeks before and
until three weeks after the birth of the child.   Again he
denied having struck her and explained that he was absent
earning money at the time of her confinement with her
consent.

Enough has been said to indicate that the finding of
the trial court that defendant has been guilty of treatment
so cruel and inhuman and involving such danger to plain-
tiff's life as to justify the decree of divorce is supported
by the record, unless he shall be excused because of provo-
cation by her.   It appears that about a year and a half
prior to the separation they attended an entertainment
given by the trainmen, where she undertook to dance a

quadrille. She had never danced before and when with him at another like entertainment sought his consent to learn. It was given with the understanding, that, when able to dance, she might attend. She learned, and, as her husband was away on the road as brakeman most of the time she accompanied Dr. and Mrs. Miller, Mr. and Mrs. Kaufman, or Mrs. Minton to and from the several dances. The propriety of her conduct is not questioned, save that she went too often. Possibly she attended more frequently than was wise, sometimes oftener than once a week, and undoubtedly her husband remonstrated with her toward the last. He testified that she attended Pellister's dance the night before the trouble in spite of his protests and assertions that he would not live with her if she went; she, that he gave his consent on her statement that she would not go thereafter. It is not to be overlooked that he was not objecting to her dancing nor to her attendance of dances in his absence, but merely insisting that she was going too frequently. Surely this did not justify him in beating his wife and threatening her life over a trivial dispute concerning their baby's shoes, especially in view of his emphatic denial of any suspicion of undue intimacy on her part with other men and of which no ground appears in the record. The decree granting the divorce has the approval of this court.

II. Custody of the child was given the mother for six months after the date of the decree, and then to the father six months, and provision made for alternating every six months. She was not to remove

2. SAME: custody of minors.

him from the State, but no such restriction was imposed on the defendant. Should he remove the child to New Mexico the court would be without power to enforce his return to the mother. Were the little boy to be regarded as a mere plaything existing alone for the pleasure and entertainment of his parents, there might be some justification in changing his place of resi-

dence twice a year; but, as his welfare is of paramount importance, he should be accorded, if possible, such a home as will conduce to his physical and moral well-being and enable him to acquire a suitable education.   No argument is required to support the proposition that a permanent abode is for a child's best interest and rarely, indeed, will a divided custody by parents who have separated prove beneficial.   Nature has devolved upon the mother the care and nurture of her children in tender years, and during that time, save in exceptional circumstances, she is best fitted and most inclined to look after their welfare.   Moreover, courts are inclined to award the custody of children to the innocent party on the theory that better treatment may be anticipated from a person who has observed the marriage vows than from him who has violated them. *Cole v. Cole,* 23 Iowa, 433.   Certainly the circumstances of this case are not such as to call for unusual provisions in the decree.   The child was under five years of age at the time of the hearing and with his mother was sharing the home of his grandmother and two aunts who regarded him with affection.   His mother was earning $12 to $15 per week as tailoress, and, with the aid of $10 per month which the decree required defendant to pay for the child's maintenance, will be able to suitably care for and keep him.   The record is silent as to any facilities for his proper care by defendant.   In these circumstances the custody of the child should have been awarded to plaintiff. As supporting this conclusion, see *Aitchison v. Aitchison,* 99 Iowa, 98; *Smith v. Smith,* 15 Wash. 237 (46 Pac. 234); *Sinclair v. Sinclair,* 91 App. Div. 322 (86 N. Y. Supp. 539); 14 Cyc. 807.

The decree will be modified accordingly.

*Reversed* on plaintiff's appeal.   *Affirmed* on defendant's appeal.