RICHARD KNOCHEMUS et al., Appellants, v. WILLARD KING et al., Appellees.

PARENT AND CHILD: Custody—Forfeiture of Right of Custody. A
1 parent who surrenders custody over his child when it is an infant must expect that the court will, in after years, be very reluctant to deprive a foster parent of such custody, when the foster parent has looked after the social, moral, and educational needs of the child since its birth, has became attached to the child, and has his attachment reciprocated by the child.

APPEAL AND ERROR: Review—Habeas Corpus. Principle reaffirmed
2 that a proceeding in habeas corpus is not triable *de novo* on appeal, and that the findings of the trial court have the force of a verdict, and will not be disturbed if there is supporting evidence.

*Appeal from Johnson District Court.*—RALPH OTTO, Judge.

JUNE 23, 1922.

APPEAL in a habeas corpus proceeding from the judgment entered by the trial court dismissing the petition. The opinion states the facts. Petitioner appeals.—*Affirmed*.

*W. R. Moore* and *T. M. Fairchild*, for appellants.

*J. M. Otto* and *Dutcher, Davis & Hambrecht*, for appellees.

DE GRAFF, J.—This is a proceeding in habeas corpus. The

petitioner Margaret Schafer is the mother of the boy in the case. He was born July 23, 1908. The mother who was unmarried at said time was nearly nineteen years of age, and was a resident of Moline, Illinois where she still resides. Immediately prior to the birth of the boy she went to Davenport, Iowa where she remained until the child was born in one of the hospitals in said city.

1. PARENT AND CHILD: custody: forfeiture of right of custody.

She first placed the child in the care of a private nurse in Davenport. On October 19, 1908 the child was taken by the mother and her sister Mrs. Whiteside to the home of Mrs. Martha Gabathuler, the intervener herein. The testimony is in conflict as to the conversations relative to the placement of the child in the Gabathuler home. It is reasonably certain that the child was taken to this home upon the recommendation of the nurse Mrs. McTurk, as Mrs. Gabathuler was a stranger to both the mother and Mrs. Whiteside.

It is the claim of the petitioner that she was seeking a place for the child where it could be kept for her in consideration of the payment of $15 a week. It is also claimed that an agreement of this kind was made and that the child was left with Mrs. Gabathuler under this arrangement "for an indefinite time." Mrs. Gabathuler testified that Mrs. Whiteside represented herself as a charity worker and requested her to take the baby. Upon inquiry as to whose child it was she answered, "I can't tell you. It belongs to a poor girl." Later Mrs. Whiteside and the mother brought the child to Mrs. Gabathuler, but made no further disclosures as to the child's parentage.

According to the testimony of the intervener no mention was made of paying her for keeping the child and no contract or agreement was entered into for its care. The facts surrounding the introduction of this child to the Gabathuler home as recited by Mrs. Gabathuler are corroborated by a Mrs. Mason who was present on that occasion. On the day the child was left with Mrs. Gabathuler it was sent to the home of her sister Mrs. Willard King at Iowa City for the reason that Mrs. Gabathuler was suffering from an abnormally large tumor which

necessitated an operation a little later. The child remained at the King home most of the time thereafter and until the filing of the petition in this case. During this time Mrs. Gabathuler made material contributions for the support ·of the boy.

It is the further claim of the petitioner that on the day following the placement of the boy she went to the Gabathuler home, and at that time Mrs. Gabathuler refused to tell her where the child had been taken and that more than a year elapsed before she finally learned that the child was in the home of Mrs. King.

In 1909 Mrs. Whiteside went to the home of the Kings in Iowa City, and demanded the child which demand was refused unless there was paid $500. At this time the child had been in the custody of the Kings for more than a year, and if we accept the statement of the mother and sister that $15 per week was to be paid for the care of the child, there was due at this time about $780 as nothing had been paid by the mother nor had anything been tendered by her.

It further appears that some conferences were had in 1910 between the petitioner and her sister and their attorney Mr. Steve Bradley and steps were taken to secure possession, but nothing came of this matter.

It appears without dispute that the mother knew where the child was during all of the subsequent years, and in 1910 she did not care to have the public know that she was the mother of the child and so testified. During the following years she remained silent, paying no attention to the child, neither giving nor tendering any support.

After the child had been in the custody of the intervener for a little more than a year after its placement it was adopted by Mrs. Gabathuler as an abandoned child and formal articles of adoption were executed:

The boy is now nearly 14 years of age. He is a strong healthy boy, clean in his habits, and seems to have well defined ideas as to the home in which he desires to remain. There can be no question but what Mrs. Gabathuler has a proper home, and that the boy is very much attached to his adopted mother

and desires to remain with those who have befriended him and cared for him since babyhood.

There are several reasons why the judgment entered should not be reversed. The finding of the trial court has the force and effect of a verdict of the jury and will not be disturbed on appeal if there is evidence to support it. *Dunkin v. Seifert*, 123 Iowa 64. The cause is not triable *de novo* in this court, and unless there is a manifest abuse of discretion or disregard of material evidence, the finding of the trial court should not be disturbed. We do not minimize the strength of "mother-love," and we recognize that the mother should not ordinarily be deprived of the care and custody of her child if she has a proper home and is the proper person to rear the child.

2. APPEAL AND ERROR: review: habeas corpus.

The mother is God's own institution for the upbringing and care of her child, but under the facts and circumstances disclosed by this case, there is little occasion for the invocation of the principle just announced. If the person in care of the child at the time its custody is sought to be changed has looked after its social, moral and educational interests for many years, and the child itself has become attached to the environment and the people who have made possible the happiness of its early years, a court is not justified for slight reasons to change that environment and transfer the custody to another. There is under such circumstances a fixed relationship and the affections of both child and the adopting parent should not be disturbed and ordinarily cannot be changed without risking the future happiness of the child. Parental rights must sometimes yield to the feelings, interests, and rights of other parties when acquired with the parent's consent. It would be fundamentally wrong, both in law and in morals, to sever the relations of a child from those who have nursed, loved and cherished it for a long period of years, and such an arrangement under an agreement, express or implied, should not be revocable at the pleasure of parent.

We cannot escape the conclusion that under the facts in the instant case the mother has either by abandonment or contract surrendered her legal right to the custody of this boy, who

in a sense is now entering upon years of discretion. His memory will play a most important part in his future happiness, acquainted as he is with the facts of his birth and the knowledge that his mother did not give him the mother's love which is so essential for the deep feeling that exists between child and mother.

Either parent may by agreement or conduct be deprived of the natural right to the custody and control of a minor child. It would be inequitable in many cases, not only to those who have assumed the natural parent's place but also to the child, to change its care and custody. It would not be fair to those who have given their years of watchful care on behalf of the interest and welfare of the child to now say, that all this is to be without consideration and that we will now rob you of the object of your solicitude. A court should consult the wishes of the child in such a case. This lad testified: "I have never been mistreated there by them. Mrs. Gabathuler has always been kind and good to me and I am fond of her." Even when asked if he wanted to talk to his mother he said, "Nobody wants to talk to anybody who wouldn't take care of them when they were little, would they?" This indicates that he has reached a period of his life when he appreciates the relations of things and that he has some conception of a mother's duty.

The mother voluntarily parted with the custody of her child and now asserts the right to recover that custody. If the assertion or the recognition of that claim involves a doubtful result as to the future happiness and welfare of the child in question the doubt must be resolved against the person who asserts the right.

Other conditions being equal, the wishes of the child if sufficiently mature in mind to form a judgment, may well be the controlling consideration. All courts recognize that the legal dominion which the law gives to the natural parent has well defined limitations. It is a dominion in the nature of a trust in which the child is the beneficiary. When the parent fails to perform the duties and obligations which that trust imposes, it may be said that the parent forfeits the legal dominion over the child. The paramount consideration after all is what is best

for the child, and it is the duty of a court to leave the child where its interests, welfare and happiness will be best subserved. As bearing upon the question, see *Bonnett v. Bonnett*, 61 Iowa 199; *Smidt v. Benenga*, 140 Iowa 399; *McDonald v. Stitt*, 118 Iowa 199; *Miller v. Miller*, 123 Iowa 165; *Larson v. Dutton*, 43 N. D. 21 (172 N. W. 869); *Clark v. Bayer*, 32 Ohio St. 299; *Bently v. Terry*, 59 Ga. 555 (27 Am. Rep. 399).

We deem it unnecessary in this case to enter the field of discussion relative to the doctrine of abandonment. The fact stands that this child was placed in the hands of strangers at its birth by the mother, and although she claims that she was denied the knowledge of the child's whereabouts shortly after its placement, she has known all through the years where the child was located, and we discover no serious effort on her part to reclaim its custody or to reassume parental duties and obligations.

The child was adopted in conformity to law by the intervener in this case. We are not inclined to disturb the articles of adoption on a disputed fact question not affecting the formal execution thereof. It is claimed that the county in which the child was adopted by the intervener was not the legal residence of the child. If not, what was its legal residence? If the testimony of Mrs. Gabathuler is to be believed the child at the time of the execution of the articles of adoption by the mayor of Davenport was an abandoned child, and the warrant of law exists in the statute for that official to execute articles of adoption under such circumstances. The strict construction of a statute in derogation of the common law finds no application to the instant case. *Hopkins v. Antrobus*, 120 Iowa 21; *Anderson v. Blakesly*, 155 Iowa 430.

The intervener when she adopted this boy about a year after its birth entertained the belief that the child was an abandoned child in the legal sense and she had a right to so believe. The boy's father was not disclosed at any time, and when the child was placed in the intervener's care its mother's name was not disclosed. No plans were outlined except that it was the thought and purpose of the mother to find a place for the child and according to her own testimony it was for an indefinite

time. Mrs. Gabathuler considered that the custody of the child was fully surrendered to her.

The facts justify the conclusion that the boy should remain where he now is. It would not only be embarrassing to the boy, but to the mother to effect a change at this time. We have no hesitation in saying that both the mother and the adopting mother are estimable women. Both are apparently in a position to give the boy a decent and respectable home. No one can question but what the boy at the present time is in a good home. His adopting parents are fairly well to do. We reiterate that the determining factor of this case is the wish of this boy to remain where he now is, and we see no good reason to overrule his desire earnestly expressed upon the trial of this cause. Wherefore the judgment entered is—*Affirmed.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.