ROLAND E. JENSEN, Appellee, v. CLARA E. JENSEN et al., Appellants.

No. 46894.

DECEMBER 17, 1946.

Yeaman & Yeaman, of Sioux City, for appellants.

Wallace W. Huff, of Sioux City, for appellee.

GARFIELD, C. J.—On April 24, 1944, plaintiff husband was granted a divorce on the ground of inhuman treatment. The parties stipulated and the court decreed custody of the minor

child be awarded Edith Holbrook, mother of defendant wife. Plaintiff was to pay $7.50 a week for the child's support. In January 1946, plaintiff filed application to modify the decree so that he be awarded custody of the child, then age seven.

The application states plaintiff was in the Navy when the divorce was granted and did not have a suitable home for the child; it was understood by the parties the child's custody would be changed upon plaintiff's discharge from the service; plaintiff has been discharged from the Navy, remarried, has a good job and suitable home, and is qualified to resume care of his child; Edith Holbrook is not a "qualified person to continue to have the custody of the child as against the child's natural parent." Defendant wife (who has remarried) and the grandmother filed resistance to the application in which they ask that the child's custody be not disturbed but if for any reason the decree were to be modified then the child should be given to her mother.

Following the taking of testimony the trial court awarded plaintiff the child's custody and deleted the provision of the decree for his payment of $7.50 a week for support. Defendant and the grandmother have appealed. We think custody of the child should have been left with the grandmother and the decree should not have been modified.

Under our repeated holdings and the authorities generally, the divorce decree is final as to the circumstances then existing. It can be modified only if plaintiff has carried the burden of proving by a preponderance of the evidence that subsequent conditions have so changed that the welfare of the child demands such modification. See, for example, Goodrich v. Goodrich, 209 Iowa 666, 668, 669, 228 N. W. 652, and cases cited; Neve v. Neve, 210 Iowa 120, 230 N. W. 339, and cases cited; 17 Am. Jur. 519, section 684; 2 Nelson, Divorce and Annulment (1945), Second Ed., section 15.49. Additional authorities to the effect the burden of proof rests upon plaintiff are Wood v. Wood, 220 Iowa 441, 444, 262 N. W. 773; Morrison v. Morrison, 208 Iowa 1384, 1386, 227 N. W. 330; 27 C. J. S. 1185, 1195, section 317c(5).

We have said time and again, and the modern authorities agree, that in a matter of this kind the welfare of the child is

superior to the claim of either parent and the wishes of the parent are entitled to little if any consideration. Freese v. Freese, 237 Iowa 451, 458, 22 N. W. 2d 242, 246, and cases cited; Lancey v. Shelley, 232 Iowa 178, 2 N. W. 2d 781, and cases cited; Horn v. Horn, 221 Iowa 190, 195, 265 N. W. 148; 27 C. J. S. 1185, 1188, section 317b; 2 Schouler on Marriage, Divorce and Separation, Sixth Ed., section 1901; Schouler Divorce Manual (1944), section 310b. Nor should the decree be modified to reward or punish either parent. 27 C. J. S. 1185, 1190, section 317b.

It is not claimed there is any material change in conditions in the grandmother's home that requires taking the child's custody from her. It affirmatively appears there is no such change. The witnesses, including plaintiff, speak highly of the devoted care and excellent home of the grandparents with whom the child has spent the greater part of her life. The grandfather has worked thirty-one years for one employer, while he and his wife reared eight children and fully paid for their home of eight rooms and bath.

Plaintiff himself testified:

"Q. Mr. and Mrs. Holbrook live in the same block * * * where the schoolhouse is? A. Yes, it is just around the corner from the schoolhouse. Q. And they own their own home there? A. Yes. * * * Q. And they have a nice home out there? A. They do. Q. And it has always been a good home for your daughter? A. Well, she is always * * * well taken care of and everything, yet. Q. And she had the child at the time you and your first wife were divorced? A. That is right. Q. How long has she had her? A. * * * for the last three years."

Trial on plaintiff's application to modify was had on January 31, 1946. Therefore the child lived with her grandparents, according to the above testimony, since about fifteen months before the divorce was obtained on April 24, 1944, at least eight months before plaintiff entered the Navy in October 1943, and about six months before plaintiff filed his petition for divorce on July 27, 1943. Both grandparents testified the little girl had been with them four years prior to the trial. Plaintiff later admitted Thelma had been with her grandmother four years,

"but she wasn't there all the time." Over ten months more have elapsed since the trial, during which presumably Thelma has remained with her grandmother as the trial court directed, pending appeal.

To continue with plaintiff's testimony:

"Q. That [grandparents' home] is the only home the little girl has known? A. *Just about, yes.* Q. It is a very good home? A. Yes. Q. You have no complaint about the way the child has been taken care of? A. As far as care and clothing and things are concerned, no, she has been well taken care of, yes. * * * They sent her to school all the time, Sunday School, yes. * * * The grandparents have given her good care and given her all their love and everything else."

The grandmother, fifty-eight years old, said:

"I always gave her a good home and sent her to school since she was old enough. I furnished her a good room to sleep in and plenty of good food and always sent her to Sunday School. * * * I think as much of her as I would my own child; my husband is also attached to her."

On cross-examination the grandmother testified one of her eight children, a daughter who had been divorced, spends considerable time at her home; this daughter has one child; "at times I take care of her little girl too." It is not shown nor claimed that the presence of this daughter in the home nor the occasional care furnished her little child is a circumstance that has changed since the divorce was granted nor that it is detrimental to Thelma's welfare. So far as shown, present conditions with respect to these matters are the same as at the time of the divorce.

Mr. Holbrook, age fifty-four, said:

"I love this little girl * * * she goes to school regularly, she is well clothed and groomed; I take her to Sunday School in the car, and she gets along with wife and I very fine."

A neighbor testified she went frequently to the Holbrook home, it is kept nice and clean, "Thelma always is very nice and clean," it is a very good home for her.

That Thelma has thrived under the devoted care of her grandparents is shown without question. The principal of the school attended by Thelma said:

"Q. Have you watched her pretty closely in her progress going to school there? A. I have. * * * Thelma has the evidence of all the care that would be needed for a child to come to school and to do good work. She is clean * * * well and warmly clad, and we have found no reason to complain about her cleanliness or her clothing. Q. What has been her deportment since she has been there? A. Very, very good * * * her scholastic achievement * * * is the best of her class of about twenty. *She had the highest scholastic marks for the present semester. * * * Her behavior is splendid.*"

There is no substantial dispute in any of the above testimony.

The desired modification of the divorce decree would mean a change from known conditions that have proven conducive to the child's welfare to surroundings of which we know little and that may well prove not for her best interests. It would be in the nature of an experiment which should not be made. It is true plaintiff was honorably discharged from the Navy, remarried, living in two rooms, and had a job. But under the evidence these changes in plaintiff's situation do not warrant the conclusion that the welfare of the child requires the modification of the decree.

Plaintiff cannot now (we refer to the time of trial) furnish his daughter as desirable a home as the one to which she has been accustomed about as far back as her memory goes. The record is silent as to the size and desirability of the two rooms occupied by plaintiff. (It is to be kept in mind plaintiff has the burden of proof.) We know nothing of the neighborhood in which plaintiff lives nor of the proximity to school or Sunday school. If we affirmed the trial court, in all probability the child, during the school year, would be taken out of the school in which she leads her class. There is no showing, for example, as to available toilet or laundry facilities in the two rooms. It is not shown that plaintiff has an automobile, as the grandpar-

ents do, in which to take Thelma to Sunday school or other desirable places, nor even that Thelma would be sent to Sunday school. About all we know is that she would be crowded into two rooms with her father and his twenty-two-year-old bride, whom she has seen but once, after being accustomed to sleeping in a good room of her own in a modern eight-room house. Plaintiff testified merely:

"I have two rooms in apartment. It is permissible to have children there. The proprietor told me it would be all right until I could find a place; I wanted to buy a place."

Obviously, care of the little girl, with the desired change in custody, would fall largely upon plaintiff's bride, of whom we know little. Is it probable the new wife would be more devoted to the child than the grandparents have proven to be, or that Thelma would continue to get "plenty of good food" as she now gets? Will the new wife be a good housekeeper? As to these and other pertinent matters we can only guess. We know Thelma would probably be the only child in her new home, since plaintiff's wife unfortunately is incapable of bearing children.

Plaintiff met his new wife in September 1944, while she was proving guns at the Dahlgren, Virginia, Navy proving grounds. They were acquainted about three months at that time and saw no more of each other until about December 20, 1945, when they were married—a little over a month before the trial.

There is no assurance plaintiff would be able, in the foreseeable future, to furnish his daughter a more desirable home than the two rooms he now occupies. It fairly appears that since plaintiff was first married, on March 2, 1937, he has never been able to provide either defendant or his new wife a better kind of home than these two rooms. Thelma was born in two rooms over a market. Defendant testified:

"We moved from house to house here in Sioux City, and then we moved to Cedar Rapids, and we stayed there about two or three months."

While plaintiff and defendant were in Cedar Rapids they sent for Mr. Holbrook and at plaintiff's request defendant and Thelma were taken to the Holbrook home in Sioux City.

Plaintiff returned to Sioux City from the Navy on December 15, 1945. On January 2d he commenced work at eighty-five cents an hour but was laid off after a week. He then started work for an "auto hospital" at a dollar an hour. He had worked there about three weeks at the time of trial. So far as shown, the longest employment plaintiff ever had was about five months. During the few months in Cedar Rapids plaintiff had at least two different jobs. While plaintiff and defendant were married defendant started working to help make a living. Plaintiff's record of employment differs widely from Mr. Holbrook's thirty-one years for the same employer.

There is considerable testimony as to unpaid bills contracted by plaintiff in both Sioux City and Cedar Rapids. Plaintiff admits some of this indebtedness. He has not repaid $40 he borrowed from Mr. Holbrook at the time of his divorce. It is true some of this indebtedness was caused by illness of plaintiff and his former wife which necessitated an operation for each of them. It may be said to plaintiff's credit that each month while in the Navy he allotted $22 from his pay to which the Navy added $20. These payments went to defendant until the divorce was granted and then to Mrs. Holbrook for the child's support.

Two matters to be considered are that plaintiff apparently is not in good health and he contemplates moving to Salt Lake City, where he spent some time while married to defendant. Plaintiff had appendicitis and stomach ulcers before he entered the Navy. He testified:

"I intend to stay in Sioux City, unless my lungs get bad and then I intend to go to Salt Lake, but not to get custody of the baby."

It could scarcely be for the child's best interests to live in two rooms with one who admits his lungs may "get bad."

There is other testimony with reference to plaintiff's moving to Salt Lake City. Plaintiff himself said:

"I had intentions of going out there, but it isn't definite. I just talked about going out there. Q. It was your intention to take the child out there? A. If I moved, yes."

In 27 C. J. S. 1179, section 313, it is said:

"It is against the policy of the law to permit the removal of the child from the jurisdiction unless its welfare would be better subserved thereby, and ordinarily custody should not be awarded to a nonresident or to one contemplating immediate removal from the state."

See, also, 27 C. J. S. 1185, 1191, section 317b.

It does not appear that the child's welfare would be served by moving with her father to Utah. We know nothing, except as we can judge from the past, as to the kind of home plaintiff could maintain in Utah. Indeed, so far as shown, plaintiff himself has no such knowledge.

With regard to plaintiff's contention that it was understood the arrangement for Thelma's custody at the time of the divorce would be changed upon plaintiff's discharge from the Navy, it is sufficient to observe that plaintiff's testimony fails to establish such understanding; it is stoutly denied by defendant and her mother; both husband and wife were represented at the time by able counsel and there is no limitation upon the grandmother's right of custody in either the stipulation or decree.

Plaintiff contends, and the trial court evidently felt, there is applicable here a presumption that the child's welfare would best be served in the custody of her father and that proof of the relationship made a strong prima facie case for him. It is difficult to account for the trial court's decision on any other theory. It is true, where the right of custody has not been adjudicated, it will be presumed, in the absence of evidence to the contrary, that a child's welfare will best be served by committing it to the custody of a parent. Cases cited by plaintiff are of this kind: Risting v. Sparboe, 179 Iowa 1133, 162 N. W. 592, L. R. A. 1917E, 318; Winter v. Winter, 184 Iowa 85, 166 N. W. 274; In re Guardianship of McFarland, 214 Iowa 417, 239 N. W. 702; Allender v. Selders, 227 Iowa 1324, 291 N. W. 176. All are original proceedings—not by way of modification of a divorce decree—involving the right of custody. All but the McFarland case are habeas corpus proceedings. In none of them was there any previous decree or other valid adjudication which deprived the parent of custody.

But the presumption for which plaintiff contends is not

applicable to a case such as this where the child's custody has been awarded to a third person by a final decree. (Here such decree was made pursuant to plaintiff's written agreement.) Under the authorities applicable here the presumption is in favor of the reasonableness of the decree sought to be modified. It is to be assumed the trial court knew and respected the rule for which plaintiff contends in arriving at the decree which awarded custody to the grandmother and denied plaintiff's alleged right of custody. Plaintiff prayed for custody of the child in his divorce petition and the award to the grandmother was necessarily a denial of the father's alleged right.

In 27 C. J. S. 1195, section 317c(5), the rule applicable here is stated:

"The presumption favors the reasonableness of the original decree, and the party seeking modification has the burden of proof to show facts warranting modification and that the change is for the child's best interests. * * * *The presumption that the best interests of the child require a parent's custody ceases where the custody of the child has been awarded to a third person by the final divorce decree sought to be modified.*" (Italics supplied.)

This quotation from Ruedlinger v. Ruedlinger, 222 Mo. App. 819, 824, 10 S. W. 2d 324, 326, a contest between the father and maternal grandfather, is not only a sound statement of the law but is peculiarly applicable here:

"The original decree of divorce wherein the custody of Elvadine was awarded to her maternal grandfather is not before us for review. *The court having by this unappealed decree awarded the custody of the child to her maternal grandfather, the presumption that the best interest of the child, which is of paramount concern, is to be in the custody of the parent, no longer prevails.* It would seem rather that the contrary presumption should be indulged until proof of change in circumstances is made satisfying the court that the best interest of the child demands that her custody be changed to the parent.

"* * * There can be no doubt that in the country home of her maternal grandparents, she is surrounded by wholesome in-

fluences, and has the benefit of wise counsel and guidance. Her school work is in every way satisfactory. Her religious training is not neglected. Her physical health and comfort are well cared for. She is contented and happy. A present change in her custody would be in the nature of an experiment which should not be made.'' (Italics supplied.)

In reversing an order granting a mother's application to modify a divorce decree which awarded custody of her child to the paternal grandparents, it was said, in Drew v. Drew, 1945, Mo. App., 186 S. W. 2d 858, 867, 868:

''Defendant [mother] is not entitled to the benefit of any presumption that the interest of the child requires that it be with its parent. * * * It is abundantly clear that * * * the change of custody authorized is at best in the nature of an experiment. Experiments with a trust of this nature should not be indulged. [Citing cases.]

''* * * 'It is highly detrimental to the welfare of small children to shift them around from one family to another. * * * When a child is legally placed in a home where it receives good treatment and moral training, it should never be removed from that home, except for the most cogent reasons.' ''

We have frequently expressed substantially the same thoughts stated in the last quotation. See, for example, Jensen v. Sorenson, 211 Iowa 354, 364–366, 233 N. W. 717, and cases cited.

Much in point is Hicks v. Hicks, 1943, 26 Tenn. App. 641, 176 S. W. 2d 371. There the husband procured a divorce. The decree, pursuant to agreement, awarded custody of his daughter, then four, nominally to the wife but actually to the wife's mother. The former husband, who then had no home and worked in another city, paid the grandmother $5 per week toward the child's support. Three and a half years later, following remarriage and establishment of a home, the husband sought a modification of the decree under a statute much like ours. The court held he had no superior right of custody and refused to modify the decree. These excerpts from the opinion, at pages 647 and 653 of 26 Tenn. App., pages 374 and 376 of 176 S. W. 2d, have direct application here:

"The argument for petitioner goes upon the idea that his right was unaffected by the former decree and that, other considerations being equal, he as the father has a superior right to the custody of his child. We think, however, that the decree was an adjudication against his right, and consequently a bar of it, upon the facts then existing; and that, in the absence of proof that there has since been a change of circumstances which requires a change of custody for the welfare of the child, the decree is still conclusive against him. * * *

"The conditions and surroundings under which the child was being reared by her grandmother at the time of the hearing were in every material respect the same as when the decree was entered. The only change in the circumstances of the parties since that decree is that petitioner has married his present wife, returned to Nashville, established a home here, and taken upon himself the obligation of rearing another family; and the child's mother has remarried and is now with her present husband temporarily in North Carolina. *But these are not matters which so materially affect the welfare of the child as to require a change of her custody.* * * *

"To support his contention that, other considerations being equal, he as the father has a superior right to the custody of his child, petitioner relies on Stubblefield v. State ex rel. Fjelstad, 171 Tenn. 580, 106 S. W. (2d) 558. We think this case is inapposite. * * * There had been no decree of the custody to either of them and there was therefore no question of res adjudicata in the case." (Italics supplied.)

Our decision is not in conflict with the majority opinion in Wooley v. Schoop, 234 Iowa 657, 12 N. W. 2d 597, cited by plaintiff. That was a contest between the father and a third person who claimed custody of the child upon death of the mother to whom custody had been awarded. The third person's right of custody had never been adjudicated. Nor had the father's right of custody been denied at any time since the mother's death. See Jensen v. Sorenson, supra, 211 Iowa 354, 362, 233 N. W. 717; annotation 74 A. L. R. 1352, 1353, where it is said:

"The prevailing rule clearly is, that, upon the death of

the parent who has held custody under a divorce decree, the right to custody automatically inures to the surviving parent."

█ The trial court has discretion in a matter of this kind and its decision is entitled to weight. But it is our responsibility to consider the case de novo. We have frequently reversed trial courts in child-custody cases. Here it seems clear the order appealed from does not promote the welfare of this child. Further, it appears the record does not support the trial court's conclusions. How can it fairly be said, as the trial court concluded, that "conditions of income, character, persons involved, and comforts of home being [are] equal or nearly so" as between plaintiff and these grandparents? The only way to account for the modification of this decree is that the trial court erroneously gave controlling effect to a parent's presumptive right of custody.

A reversal of the order of modification finds support, in addition to the authorities before cited, in: Paulson v. Windelow, 236 Iowa 1011, 20 N. W. 2d 470; In re Adoption of Karns, 236 Iowa 932, 20 N. W. 2d 474, 478; Lancey v. Shelley, supra, 232 Iowa 178, 2 N. W. 2d 781.—Reversed.

BLISS, HALE, SMITH, MANTZ, and HAYS, JJ., concur.

OLIVER, J., takes no part.

WENNERSTRUM, J., dissents.

WENNERSTRUM, J. (dissenting)—Inasmuch as I have a sincere conviction as to the correctness of the trial court's holding I am unable to join in the majority opinion and consequently respectfully dissent.

It is true that the paramount question that should be considered by the court in its consideration of a case such as is presented in this appeal is the welfare of the child. It is also true, as is disclosed by the record set out in the majority opinion, that from a material standpoint the child will undoubtedly have more advantages in the home of the grandmother than those that might be provided by the father at this time. However, there are more than material advantages to be gained by a child, and that is the love and devotion of a parent. This

phase of the child's welfare is apparently not given consideration by the majority opinion. The love and devotion of a parent cannot be fostered where courts are disposed to make it impossible. It is the thought of the writer of this dissent that it is time for the courts to take a position which will foster the stability of family life and give to one of the parents, under circumstances such as are here presented, the opportunity of rearing a child where it is not shown that one of the parties is an unfit person to have the custody of the child. I am conscious of the fact that my expressions are not supported by the majority holdings of this court and other courts but that does not preclude me from stating what I feel should be the law and holding of this court. I therefore respectfully dissent.