AVIS L. MARON, Appellant, v. RAYMOND R. R. MARON, Appellee.

No. 47007.

June 17, 1947.

Whicher & Davis, of Sioux City, for appellant.

Kindig, Kindig & Beebe, of Sioux City, for appellee.

GARFIELD, J.—On November 29, 1945, plaintiff, Avis Maron, obtained a divorce from defendant, Raymond Maron, on the ground of inhuman treatment. The decree, pursuant to stipulation of the parties, awarded the custody of their two little girls to the parents in alternating six-month periods, defendant to have them during the first six months. As provided by the

decree, the children were given plaintiff mother by defendant father on June 1, 1946. Defendant filed application on June 21, 1946, asking that the decree be modified so as to award him exclusive custody. Plaintiff resisted defendant's application and in turn asked that the decree be modified so she be given full custody of the children.

Evidence was heard on July 23, 1946. The husband's application was granted except that plaintiff was given the right to visit the girls on reasonable occasions and during the school vacation period they could visit plaintiff for two weeks. Defendant was also relieved from paying plaintiff $35 per month during the six-month periods the children were to have been with her as provided by the original decree. Plaintiff has appealed to this court.

The parties were married in August 1937. Plaintiff was then sixteen; defendant, about four years older. At the time of the hearing below the little girls were five and six years old. Defendant was in the Army nearly three years before his discharge on October 22, 1945. Since March 1944 he had been overseas. Plaintiff filed her petition for divorce in April 1944. Apparently the matter lay dormant until about October 29, 1945, when she filed an amended petition. Defendant says he did not live with plaintiff after his discharge from the Army.

On November 30, 1945, the day following the divorce decree, plaintiff married John Stough, about fourteen years her senior, who had also served in the Army nearly three years prior to his discharge on August 28, 1945. Stough had also been married before. He and his former wife separated in 1940 and he was awarded a divorce in 1941, with custody of two of his four children. At the time of the hearing below two of Stough's daughters, then age sixteen and seventeen, were living with Stough and plaintiff. Stough testifies:

"After I came out of the army I saw her [plaintiff] the first day I got home and started dating her about that time. I knew she was married, but she told me she was getting a divorce."

On April 12, 1946, twins were born to plaintiff, but one

of whom survived. Stough is the father of this child. Plaintiff says the twins were conceived on September 16, 1945, about two and one-half months before she was divorced from defendant, when he was in foreign service. It appears the twins were born prematurely and even the one survived with difficulty. This baby lived with plaintiff and Stough at the time of the hearing below.

Defendant also married a second time, on March 18, 1946. His present wife is eighteen—eleven years younger than defendant. She had never been married before, was brought up on a farm, and had two sisters and five brothers. She says she assisted as a girl in caring for her younger brothers and sisters. Prior to her marriage she had worked two years at Armour's in Sioux City, where defendant worked both for six years before his Army service and after his discharge therefrom. Defendant's father and mother and plaintiff's father also all work at Armour's. Stough, plaintiff's husband, is a truck driver for a creamery at $55 a week.

On February 23, 1946, plaintiff filed application to have the divorce decree modified by awarding her full custody of her two daughters. Defendant resisted the application and also filed what he called a counterclaim asking that he be given permanent care of the two little girls. Plaintiff's application and the resistance thereto were heard on March 6th and the application was overruled. No ruling was made on defendant's "counterclaim" and apparently it was not submitted to the court. No appeal was taken from the ruling of March 6th. As stated, defendant's application that led to the decree of modification from which this appeal was taken was filed June 21, 1946.

The parties apparently have agreed both in the lower court and here that it is not for the best interests of these two little girls to divide their custody between the two parents and that the original decree should be changed to give one parent the entire custody, subject to the usual right of visitation in the other parent. We have recognized that experience has shown it is ordinarily not for the welfare of children to live part time in one household and part in another. In many instances such

an arrangement is destructive of discipline. Bennett v. Bennett, 200 Iowa 415, 418, 203 N. W. 26; Caldwell v. Caldwell, 141 Iowa 192, 195, 119 N. W. 599. See, also, Ladd v. Ladd, 188 Iowa 351, 355, 356, 176 N. W. 211; 27 C. J. S., Divorce, section 308d. In any event, this arrangement for divided custody contained in the original decree seems not to have proven for these children's welfare.

Partly because of the parties' concession that full-time custody should be awarded either father or mother, we are not disposed to interfere with the award to the father. It is doubtless a serious blow to the mother's feelings to be deprived of the custody of her two young daughters. But the feelings or wishes of either parent are entitled to little, if any, weight in a matter of this kind. The welfare of the children is superior to the claim of either parent and is the controlling consideration. Jensen v. Jensen, 237 Iowa 1323, 1324, 25 N. W. 2d 316, 317, and authorities there cited; Herr v. Lazor, 238 Iowa 518, 28 N. W. 2d 11; Vierck v. Everson, 228 Iowa 418, 421, 291 N. W. 865; 39 Am. Jur., Parent and Child, section 20.

The proper determination of this controversy largely involves fact questions that depend on matters of credibility of witnesses and character and appearance of litigants. The trial court was in better position than we are to determine such matters. We are justified in giving weight to its conclusions. It was vested with some discretion in making its decision and we should not interfere unless it appears there was an abuse of discretion. Ellison v. Platts, 226 Iowa 1211, 1215, 286 N. W. 413; Wood v. Wood, 220 Iowa 441, 447, 262 N. W. 773; Rust v. Trapp, Iowa, 201 N. W. 565; 27 C. J. S., Divorce, section 310. We fail to find an abuse of discretion here.

Plaintiff argues there is a presumption these little girls will be better off in the custody of their mother and such presumption has not been overcome. It is true we have said in effect that, save in exceptional circumstances, the mother is best fitted to care for children of tender years and ordinarily they will be placed in her custody. Caldwell v. Caldwell, 141 Iowa 192, 195, 119 N. W. 599; Wood v. Wood, 220 Iowa 441, 446,

262 N. W. 773; both cited by plaintiff. See, also, 39 Am. Jur., Parent and Child, section 22. Such presumption, if it can be so called and if it exists in the present controversy, is not entitled to the weight it should—and we assume did—have in arriving at the terms of the original decree.

The Caldwell case, supra, was an appeal from an original divorce decree in which the custody of a small child had been equally divided between mother and father. In the Wood case, supra, the original decree awarded custody of two young children to the mother and the father sought a modification of the decree so he would have the children. Here plaintiff's petition for divorce prayed for complete custody of the children. Although, as stated, the decree was entered pursuant to stipulation, it is a final adjudication against plaintiff's alleged right of complete custody as to the circumstances then existing. Jensen v. Jensen, 237 Iowa 1323, 25 N. W. 2d 316, and authorities there cited. The order of March 6, 1946, is also a final adjudication against plaintiff's right of full custody as of that date.

Furthermore, there is no hard and fast rule as to which parent or other person should be awarded the custody of children. Each case must be judged on its own facts. 27 C. J. S., Divorce, section 308b; 39 Am. Jur., Parent and Child, section 20. The presumption, if it be such, in favor of a mother of young children, to which plaintiff refers, is resorted to merely to aid the court in a particular case to determine what is for the best interests of the children. No one should be awarded the custody of children where their welfare will be served by placing them with another custodian. See authorities last above; also, Herr v. Lazor, 238 Iowa 518, 28 N. W. 2d 11, and authorities there cited.

These are some of the considerations we think justify the conclusion it is for the best interests of these children to be in their father's custody: The mother's admitted adultery, unknown to the court at the time of the decree, with the man whom she married in another state the day following her divorce and with whom she is now living. If these girls were awarded the mother, there would be three sets of children in one family

—Stough's two daughters by his former marriage, these two girls, and the child born to plaintiff and Stough in April 1946. This might well make for jealousy and friction.

Although plaintiff seems to have genuine affection for these two daughters, she apparently does not have a pleasant disposition, "is not very easy to get along with," and uses rough and profane language. In the presence of the children in controversy, plaintiff called the home of defendant's parents, where defendant lives, a whorehouse. A short time before the hearing below plaintiff had a physical encounter with another woman, an "in-law," and was held in jail for a time for questioning. Plaintiff's landlord from February to July 6, 1946, served notice on plaintiff and Stough to vacate the apartment occupied by them because there was noise in the apartment in the evening and there were complaints from other tenants and a neighbor.

This apartment occupied by the Stoughs consisted of two rooms, each about seven by ten feet, with a hall and back porch. During June, when the two girls in controversy were with plaintiff, there were seven occupants of the apartment: plaintiff and Stough, the latter's two daughters, the girls in controversy, and the baby born in April. Following their eviction from the apartment the family moved about July 6th (two and one-half weeks before the hearing) to an eight-room house for which they had no lease.

Although the home provided by defendant is not ideal, he and his new wife live in a ten-room duplex house his parents have owned for two years. The parents and defendant's brother, the brother's wife and child also live there. Defendant is trying to find a home of his own. The two girls lived in this home from the time of the divorce until June 1, 1946. Before that the children, with their parents, stayed in the home "for a while when their house burnt down." The girls also stayed in this same home "off and on all the while Ray [defendant] was in the army, especially Saturday nights until Monday and Tuesday mornings."

Defendant's new wife, who testified, impressed the trial court as a splendid young woman. She had much of the care

of these children from the time of her marriage on March 18th to June 1st, when they were surrendered to plaintiff.

While, of course, there is other testimony we need not review it. We have mentioned enough to demonstrate that it does not appear the trial court abused its discretion in the award of custody to the father. There is a sufficient showing of changed conditions since the original decree or of material facts not then known to the court to support the decree of modification in furtherance of the children's welfare.—Affirmed.

OLIVER, C. J., and BLISS, HALE, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.