CLARENCE D. HERR et ux., Appellees, v. STEPHEN W. LAZOR et al., Appellants.

No. 47022.

JUNE 17, 1947.

Bobb, Spoerri, Bourland & Harris, of Chicago, Illinois, and Westfall, Laird & Burington, of Mason City, for appellant.

Dunn & Dunn, of Mason City, for appellees.

HALE, J.—This is an action in equity by the plaintiffs, Clarence D. Herr and Esther L. Herr, husband and wife, asking for the custody of a minor child, Michael Stephen Lazor. Defendants in the action are Stephen W. Lazor, the father of the child, and his divorced wife, Leona, the mother, now the wife of one Malloy. Leona defaulted and the defendant, Stephen W. Lazor, appeared and resisted. He will hereafter be designated as the defendant. On the trial the court held that it was for the best interest of the child that his custody be awarded to the plaintiffs, his grandparents.

Leona and Stephen were married on the 5th day of January 1940, and lived together as husband and wife until on or about the 17th day of May 1943. There was born as the issue of said marriage Michael Stephen Lazor, on December 30, 1940. Leona and Michael lived with the defendant, Stephen W. Lazor,

in Chicago, from the time of the birth of said child until on or about the 17th day of May 1943, except at times the mother and child visited the mother's parents, the plaintiffs in this action, at Mason City, Iowa.

On May 17, 1943, Leona left her husband in Chicago and brought the child to her parents, plaintiffs, at Mason City, where he has lived ever since except a short time the child was with the mother in Des Moines before her marriage to Everett Malloy. In the summer of 1944 the district court granted a divorce to Leona from Stephen and awarded her custody of the child, Michael S. Lazor. On October 10, 1945, Stephen W. Lazor, defendant herein and the defendant in the divorce action, filed an application for modification of the decree of divorce and asked for the custody of the child, with notice to Leona Malloy, the mother, who was then married to Everett Malloy. Plaintiffs herein were not made parties to the application for custody, although the child was living with them. In the application Stephen made charges against Leona Malloy and Everett Malloy, alleging their unfitness to have custody of the minor child, although the child at that time was not living with them. There was no defense made to this application and the court granted the custody of the child to Stephen W. Lazor. The court, however, expressly retained jurisdiction for the purpose of making such further orders as should be proper or necessary for the best interest of the said minor.

The plaintiffs in this proceeding have had the actual custody of Michael Stephen Lazor since on or about May 23, 1943, except for the short time mentioned. Up to the time of the bringing of this action Stephen W. Lazor has made no attempt to take the child from its grandparents, or assume the actual custody thereof, although he claimed that he had been making preparations for the care of the child in Chicago.

In the present action plaintiffs allege in their petition the fact that they have had the care of Michael Stephen Lazor; that the defendants have not contributed to the support; that defendants knew of the whereabouts of the child but evidenced little or no interest in his welfare; that both defendants had promised the plaintiffs that they could adopt their grandson,

and that they were able and willing to provide a good home, proper schooling, and religious instruction for him. They further allege that the defendants, Leona Malloy and Stephen W. Lazor, are not fit and proper persons to exercise care, custody, and control over the minor child; are not able to provide a proper home for him, and that if the defendant Stephen W. Lazor is allowed custody of said minor child he would be placed in a boarding school outside of this state. And generally, that the interest, welfare, and happiness of the minor child would be best served in awarding his custody to the plaintiffs. They ask such custody and a writ of injunction against defendants from interfering with the custody of said minor child pending the outcome of this action.

As stated, Leona Malloy made no defense and was held to be in default, and Stephen W. Lazor, while admitting the general statement as to the present location of the child, denies specifically and generally most of the statements contained in plaintiffs' petition.

On trial the plaintiffs testified as to the situation and care of the child and the facts leading up to their assuming the custody of the child; that the baby had lived at the home of its grandparents from May 1943 to the present time; that during the twenty-six months Stephen W. Lazor had shown little interest in the welfare of the boy; that he contributed very little to his support, and that the only time he ever offered anything for his support during the period of the life of the boy at his grandparents' was at about the time this action was commenced; that the father had come out from Chicago to Mason City only three times since the grandparents had assumed custody; that he knew that the child was in the plaintiffs' home; that the third time the defendant Stephen W. Lazor was at plaintiffs' home he stated that he had gotten out papers for the boy to stay at a boarding school in Chicago; that, although he had previously consented to the adoption by the grandparents, at this visit he said that "he wouldn't allow us to adopt him [and] his [previous] statement about allowing us to adopt the youngster was just oral and wouldn't stand"; that at first he denied

he had told plaintiffs that they could adopt him, but after awhile admitted that he had so agreed.

The plaintiff Clarence D. Herr testified that Michael Stephen Lazor has his own room at their house; is well cared for in school, and that he considered the boy as his own son and treated him as such. The plaintiffs have three children, including Leona, who is married and away from her former home; a seventeen-year-old daughter, who lives there and works at least part of the time, and a third daughter, who is married and lives in Mason City. The grandfather is an electrical engineer at the cement works, a member of the Trinity Lutheran Church, and owner of his home. He testified that his average monthly income was between $225 and $250 a month and that the only child dependent upon him for support was Michael, the grandson. The evidence of the grandmother was to much the same effect. There was some evidence that she works part of the time as a waitress, but at times when neither her daughter nor herself was in the home provision was made with a neighbor for the care of the child. She also testified as to the promise of Lazor that the child might be adopted by its grandparents. There was reference in the testimony to a loan made to the defendant at the time the child was born but no claim that it was not repaid. There seems to be no dispute that at some times Lazor had contributed to the child in various ways but in small amounts. Among the contributions he established a credit of $50 at a local store for clothing.

Various witnesses testified to the character of the defendant from the time that he was married to Leona and to the manner in which the husband and wife lived in Chicago. There was some testimony offered as to his drinking in former years and to his general character and reputation in times past, which went into the record under the equity rule. Also there was testimony as to his not providing well for his family. In general, witnesses characterized him as irresponsible. Part of this testimony extended up to sometime in 1945. One witness, a neighbor in Chicago, was the godmother of the child and her testimony, in substance, was that defendant Stephen was an unfit person to have the care of the boy. The statements of this witness are

entitled to some consideration since, as such godmother, she was responsible for the child's religious education, but she stated, notwithstanding that the grandparents were not of her religious faith and that his father was of her own, the child would be better situated and better cared for by the grandparents than by his father.

Various witnesses testified to the defendant's lack of care and attention to his family while in Chicago, and to his general habits and improvident ways. This was during the time when the husband and wife and child were together in Chicago. Of course, the testimony did not and could not extend up to the very time of the trial, but was sufficient to satisfy the court as to the general character of the defendant. The general effect of such testimony was that the mother and child were not adequately provided for. Among other things it was shown that the mother worked in a beauty shop until a week or so prior to the birth of the child. It is not practical or necessary to further set out in detail the testimony offered on trial. It was of the general type referred to.

The defendant denied most of the evidence as to his character and habits, and asserted that while he originally earned $20 to $30 a week he was now in receipt of wages amounting to $260 to $280 per month; that he was able and ready to support the child and that he intended to place him in a good school, three blocks from the room defendant occupied, where he would be in school during the week and they could be together on week ends. No question is raised as to the character of the institution, and the tuition is between $75 and $85 per month. The father has not remarried nor did he make any statement as to any intention of remarrying. His present home is a single room and during his married life the home provided by him had been of similar character—somewhat restricted quarters. According to his statement his employment is that of a foreman of painters employed by a hotel company. He offered in evidence letters from his employer as to good character, and, under the equity rule, they went into the record, although they were not sworn to. He denied specifically the testimony of all witnesses as to his excessive drinking and stated, in general,

that his use of liquor was temperate. He did not state that he had accumulated any amount of money and he was the only witness as to his ability to care for the child.

There was only one other witness for the defense, a deputy probation officer, who testified from her records only as to the general situation of the child and the character of the new husband of the mother. But there were no other witnesses for the defense as to the character, ability, or fitness of the defendant Stephen to take charge of the child other than the father himself.

The court in its decree found the facts as heretofore stated, and further stated that, at the request of the defendant Lazor, through his attorneys, and with the acquiescence of all parties to the proceeding, he had visited the home of the grandparents and found the child in good condition; that the present home was comfortable and adequate; that the plaintiffs appeared to be upstanding and of good character and that there was nothing to indicate that the child did not have the proper training and care and the proper educational advantages. The court stated that it believed the plaintiffs in their statements, and the lack of attention paid to the child would lend credence to the fact that the father was not very much interested in his son. The court found that the conduct as a husband and father was not to be commended and that he was inclined to be somewhat irresponsible. The court asserted that it was not impressed with the defendant as the proper person to have custody of a five-year-old boy, and in conclusion found that it would be highly improper to do otherwise than to give the plaintiffs the custody, and entered decree awarding the custody of the child to the plaintiffs.

I. The defendant-appellant alleges error of the district court in its awarding the custody of the child, alleging in Division I of his argument that the court erred in admitting testimony as to the general reputation of the defendant, and as to such testimony being too remote. Numerous cases were cited which we need not now consider. The counsel erroneously stated such testimony was admitted by the court. It was received under the general equity practice but no ruling was made as

to its admissibility. We here are trying the case de novo and we must determine the admissibility of the testimony and its application to the questions involved in the case. Even if we should hold that the objections of defendant were well taken, there is sufficient other testimony to warrant the decision of the trial judge.

Defendant cites, among other matters, an article in 24 Iowa L. Rev., Techniques and Theory of Character Testimony, 498. On page 503 of the article it is stated:

"Therefore, it is loosely said that character testimony in civil cases is limited to the subject of credibility of witnesses and has no other use. However, there are certain types of civil suits in which character may become a material issue as in cases of seduction, breach of promise, criminal conversation, malicious prosecution, and libel and slander. In this class of civil cases in which character of a party is the very matter in issue, either upon substantive liability or the amount of damages, it becomes a proper subject of proof."

The present action is of the character of those excepted cases referred to in the preceding statement. In the selection by the court of a person to care for a small child there are various considerations: first, the ability to give the proper care; and another, and most important, is the character of a person to whom the custody is to be assigned. Both the physical welfare and the future moral welfare of the child are important. So, in consideration of a question of the kind we have in this case, it is proper for the court to consider carefully all testimony which may bear upon the custodian's character and the introduction of testimony as to specific matters could not be otherwise than proper. The remoteness of that inquiry must, of course, be within the court's discretion, and it should have the right to consider, within reason, past as well as present matters adduced by the testimony. We are not inclined to hold that the court erred in giving to such testimony such weight as it might be entitled to in forming its estimate of the ability of the defendant to care for the child.

II. In Division II of his argument defendant argues

that the presumption is that the welfare of the child will be best subserved if placed in the care and control of the parent, and that the court will so award the custody unless the presumption has been overcome by the evidence showing the parent is unfit to have that custody. This argument has been before us at various times. Our holdings—more especially our recent holdings—are based upon the theory that that should be done which is for the best interest of the child; that always, whether the custody is awarded to the parent or another, it is the interest of the minor which the court has in mind. The district court in its ruling referred to the case of Jensen v. Sorenson, 211 Iowa 354, 364, 233 N. W. 717, 722. It is therein said:

"In our judgment, no adequate reason is shown in the record for a change of custody, unless it should be held that the father has a primary right to such custody. In cases where others than the parent have maintained the care and custody of a child and have become bound to it in affection, we have not infrequently held the rights of such custodian to be paramount to the rights of a parent, in a given case. Much that we have said in previous cases is quite applicable to the case at bar." Citing Knochemus v. King, 193 Iowa 1282, 188 N. W. 957.

In Knochemus v. King, supra, at page 1285 of 193 Iowa, page 959 of 188 N. W., we said:

"Parental rights must sometimes yield to the feelings, interests, and rights of other parties when acquired with the parent's consent. It would be fundamentally wrong, both in law and in morals, to sever the relations of a child from those who have nursed, loved and cherished it for a long period of years, and such an arrangement under an agreement, express or implied, should not be revocable at the pleasure of parent."

The Jensen case further cites Barry v. Reeves, 203 Iowa 1345, 214 N. W. 519; Sandine v. Johnson, 188 Iowa 620, 176 N. W. 638; In re Guardianship of Lally, 85 Iowa 49, 51 N. W. 1155, 16 L. R. A. 681.

Among the number of cases where the question of custody

was in issue is our more recent case of Lancey v. Shelley, 232 Iowa 178, 182, 2 N. W. 2d 781, 783, where the question of claim of presumptive right is discussed, and some of the cases involving that question are discussed. In the Lancey case it is argued that only in cases of imperative necessity may a trial court interfere with the natural right of a parent to the custody of a minor child. The case states:

"While some decisions speak of the paramount interest of the parent, we believe the general holding of this court is that the interest of the child is first to be considered."

There is cited the case of Smidt v. Benenga, 140 Iowa 399, 118 N. W. 439; also Allender v. Selders, 227 Iowa 1324, 1332, 291 N. W. 176, 180, which holds that:

"The controlling consideration should be the present and future best interests of the child, with due regard to the natural rights of the parent."

Also, Risting v. Sparboe, 179 Iowa 1133, 162 N. W. 592, L. R. A. 1917E, 318; Ellison v. Platts, 226 Iowa 1211, 1215, 286 N. W. 413, 414. In the Ellison case it is stated:

"In matters of this kind, the well settled rule in this state is that the paramount consideration is the best interests of the child." Citing other cases to that effect.

Our most recent holding in a matter of this nature is our late case of Jensen v. Jensen, 237 Iowa 1323, 1324, 25 N. W. 2d 316, 317, an opinion by Garfield, C. J., wherein it is said:

"We have said time and again, and the modern authorities agree, that in a matter of this kind the welfare of the child is superior to the claim of either parent and the wishes of the parent are entitled to little if any consideration."

The case was an application by a husband to modify a divorce decree to award him custody of the minor daughter. The trial court granted the relief and the maternal grandmother, to whom custody was granted, appealed. The case was reversed and the child continued, as originally provided in

the divorce decree, in the care of its grandparents. See authorities cited.

This Jensen case reviews various authorities holding, as we do herein, that the question of the best interest of the child is the paramount consideration. Defendant cites various cases in support of his claim, none of which we think applies to the facts in the present case.

Without further review we mention, as cited by the defendant: Wooley v. Schoop, 234 Iowa 657, 12 N. W. 2d 597; Adair v. Clure, 218 Iowa 482, 255 N. W. 658; Allender v. Selders, supra; McFarland v. Taylor, 214 Iowa 417, 239 N. W. 702; Bonnarens v. Klett, 213 Iowa 1286, 241 N. W. 483; Van Auken v. Wieman, 128 Iowa 476, 104 N. W. 464; Dunkin v. Seifert, 123 Iowa 64, 98 N. W. 558. Each case naturally, as in cases pertaining to other matters, must depend upon the facts. While in cases involving the custody of children the court must and will consider the rights of parents, yet, in this case, as in many cases which have been before this court, we should follow the general rule, well established by authority, that the interest of this minor must control the action of the court. Our review of the evidence convinces us, as it did the trial court, that the child is well placed under the affectionate care of the grandparents, who are able and willing to give him the opportunity to grow up in an atmosphere conducive to his physical and moral welfare; that such affectionate regard is a necessary and vital element in the development of character. On the other hand, should the custody of this child be awarded to the father, who, however he might desire to do so, could not give him the appropriate surroundings or the home training he should receive, as where he is now situated, at the best, and assuming that the father would carry out the intention that he has expressed, the training of the child would be institutional. No matter how worthy an institution may be, yet such training can never take the place of the home.

The arguments of the defendant and the suggestions made as to the undesirability of the Herr home we think are not borne out by the testimony offered. Like the trial court,

we are not altogether impressed with the testimony of the father in view of the record showing at the trial. To make a change at this time would be a transfer from the known to that which is at best unknown, and would be a change from a situation which we feel is satisfactory and good to that which seems to us not advantageous to the child. We must hold with the trial court, and the case is therefore affirmed.—Affirmed.

OLIVER, C. J., and BLISS, GARFIELD, HAYS, MANTZ, MULRONEY, and SMITH, JJ., concur.